BANK OF MORTON v. ETHRIDGE & HARDEE ET AL.

[72 South. 902.]

PARTNERSHIP. *Liability on note. Ratification.*

    Where the managing partner of a partnership business had full authority to contract debts and borrow money to carry on such business, and did so with the knowledge of his copartner, and the money borrowed from plaintiff bank, was used to pay the debts of the partnership in the regular course of its business and inured to the personal benefit of the copartner in paying the necessary expenses and debts of the business which otherwise he would have had to ultimately pay and such copartner did not object or protest, but impliedly acquiesced therein, in such case the copartner ratified the loan and became liable on the note given therefor, though he had previously notified the plaintiff bank not to loan money to the partnership.

APPEAL from the chancery court of Scott county. HON. G. C. TANN, Chancellor.

Suit by the bank of Morton against Ethridge & Hardee and others. From a decree for defendants, dismissing the bill as to defendant Hardee and others, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Howie & Howie,* for appellant.

We are unable to find any thing in point against us in the cases cited by the counsel in their brief. Most of them are wholly different in the facts and in no wise applicable.

The case of *Langan* v. *Hewett,* is a case where there was a partnership agreement which bound the partners as to what they could and could not do. In the present case there was no partnership agreement at all. They were running as general partners without any limitations on the powers of either. The only time that there was any attempt to limit the powers of either was when the appellee wrote the Bank regarding one loan. Later the partner Ethridge states that it was agreed between him and Hardee that he, Ethridge, should come back to Morton and run the business and that he was to get a loan from the Bank of Morton if he could. No one has denied the correctness of this statement of Ethridge, not even Hardee himself. Then the facts are that there was no limitations on the power of Ethridge at the time of making of this loan. Ethridge told the bank that he had authority to borrow the money, he was in charge of the business with the knowledge and consent and on the direction of Hardee.

In the case of *Bloom* v. *Helm,* one partner signed accommodation paper. This was not within the scope of his authority nor in the course of the business of the firm. In the present case, even counsel for the appellee do not contend that this money was not loaned in the usual course of the business and that it had not been done before and was proper in the handling of the business. Here it was customary for the thing to be done and was within the scope of the partner's authority, there it was not. Quite a different case.

The case of *Price* v. *Crawford,* is also different. The trouble there was that the debt was contracted without the scope of business. Here it was not only within the

112 Miss.—14

scope of the business but had been done many times before. Further, by the uncontradicted testimony of Ethridge, it was procured on the suggestion of Hardee to Ethridge.

The case of *Stegall* v. *Coney* turned on the point of fraud on the part of the partner in the making of the debt. Here there is not the least taint, or suggestion of taint, of fraud.

In the case of *David* v. *Richardson*, the court repeatedly stated that: "If the money was not necessary in the business" then the firm would not be liable and it not being found necessary in that business under consideration it was held that the partnership was not bound. In the case now before the court everybody acknowledged, and no one will now contend, but that the money borrowed from the bank was necessary to the business and was actually used in the partnership business for the payment of debts that the defendant, Hardee, would have otherwise had to pay.

In the last named case there it also the modification that such is the law unless he "subsequently ratified the transaction." In the present case we are insisting that regardless of all other contentions we are entitled to stand on the proposition of ratification by Hardee.

In the case of *King* v. *Levy*, one member of the firm attempted to bind the firm for the payment of his individual debt. This was properly held to be without the scope of his authority. Then, too, there was a contract or articles of agreement which forbade such. Here the money was for the firm and used by the firm and there was no partnership agreement affecting the transaction. The quotation from Judge Campbell's opinion cited recites that there were articles of the partnership agreement which forbade the making of the firm liable for the partner's individual debt; so none of this is in point.

We do not want to be tedious, or appear to cite cases endlessly, in our briefs in this case. But for fear

that we shall let our perfect confidence in the correctness of our contentions lead us away from citing some law that would be helpful, we are going to cite further authorities to sustain our argument as set out in our first brief.  5 Elliott on Contracts, pages 1073, 1074, 1075, 1087, 1088, 1102;  *Buetner* v. *Steinbrecker,* 91 Iowa, 588; Rand, Commercial Paper, section 399; *Clark* v. *Hymann,* 55 Iowa, 14; *Levy* v. *Abramsohn,* 81 N. Y. Sup. 344; *Tate* v. *Clements,* 16 Fla. 339; *Drumwright* v. *Philpot,* 16 Ga. 424, 60 Am. Dec. 738; *American Ex. Bank* v. *Georgia Company,* 87 Ga. 656.

To hold that Hardee is not liable is to hold that he can accept the fruits of the loan and keep his money in his pocket, instead of returning that which was borrowed to pay his own debts.  This is not equity.

*J. D. Fatheree,* for appellee.

None of the cases cited by appellant are in line with the case at bar. No one denies that any one partner can bind the partnership business, but that is not the case here.  In the case at bar one of the partners, Hardee, gave the complainant written notice that he, Hardee, would not be responsible for any further advances or accommodations made to Ethridge, the other partner, for anything.  The court will see from the testimony of Mr. Moore that the bank had made only one loan to Ethridge & Hardee before the loan in question.  Hardee learned about this loan, while on a trip over to Forest and came back home and gave the complainant written instructions not to do so again expecting him to be responsible, the complainant acknowledged receipt of the instructions and promised to abide thereby and about eight months thereafter advanced Ethridge the loan, a part of which is in question, without any revocation of the instructions from Hardee, and now tries to hold him for the debt in the face of these facts, according to Ethridge, which is the only testimony on the point,

that at the time the note became due there was enough partnership property to satisfy the balance due on the note.

The supreme court says, in the case of *Langan et al., Executor,* v. *Hewett,* 13 S. & M. 122, quoting from Story on Partnership, page 194, note 2: "It is said one partner cannot, in violation of known stipulations in articles of partnership, bind the firm even for money which is applied in liquidation of debts of the firm." This case, more than any other cited by appellant, fits the case at bar. The other cases cited merely declare the well known rule that in the ordinary course of the partnership one partner can bind the firm but that rule does not fit the facts of the case at bar and therefore does not apply.

*Green & Green,* for appellee.

The liability of Hardee is predicated upon the proposition that one partner has power to bind another partner in the firm business, without his knowledge or consent; but this fails to give effect to the controlling legal proposition in the case, viz: that where there is a limitation on the power of one partner to bind the other in the business, and this is known to the party with whom the dealing is had, then the agency ceases and the partner is not bound individually.

None of the cases cited by appellant apply to this case for this reason. *Langan* v. *Hewett,* 13 S. & M. 123, 126, holds: "It is said that one partner cannot, in violation of unknown stipulations in the articles of partnership, bind the firm, even for money which is applied in liquidation of the debts of the firm. Story on partnership, 194, note 2."

In *Bloom* v. *Helm,* 53 Miss. 21, it was held: "Each member of a mercantile partnership may draw and accept bills of exchange in relation to and in furtherance of the partnership business, and although the partnership articles prohibit either member to draw or accept

bills, this in nowise affects the public, except as it has notice of it, for the mere formation and existence of the partnership is the communication of power to each member to transact the business of the firm, and bind each partner accordingly." Note that the agency is restricted where the party dealt with has notice of the limitation.

In *Price* v. *Crawford,* 50 Miss. 344, there was a planting corporation, which was in principle like that of operating a turpentine orchard, as in the case at bar.

In the case at bar, however, the chancellor has found, as a fact that the bank knew that Hardee had forbidden any loan to be made to the firm.

In *Stegall* v. *Coney,* 49 Miss. 761, 769, it was held: "The authority of a partner is limited to those things done in the regular course of the business of the firm; outside of this he has no authority, Parsons on Partnership, 163. If he sells the whole or a part of the assets, with the intent to apply the proceeds to his own use, and thereby defrauds his partners, if the purchaser from him has knowledge of such an intent, or the transaction was attended with such circumstances as would have imparted knowledge, but for his gross negligence, then the purchaser's title is affected and vitiated. Parsons on Partnership 164. If the attempt be to mortgage or assign, and that be done in an unusual way, or under suspicious circumstances, such an act would be of no effect, as against the parties injured thereby." *Davis* v. *Richardson,* 45 Miss. 499.

From the foregoing authorities it is clear that when Hardee notified the bank not to lend the firm any money, and the bank violated these instructions and allowed Ethridge to borrow money in the name of the firm, there was no liability upon Hardee therefor. It is contended, however, that Hardee is bound because the proceeds of the loan were used in partnership business.

*King* v. *Levy,* 13 So. 282 holds: "Where the articles of copartnership expressly deny the right of each part-

ner, without the consent of the other, to bind the firm for borrowed money, a contract in violation of such agreement would not be valid, though it was made in furtherance of the interests of the firm."

The chancellor has found on the facts, and on a conflict of the evidence that the bank was forbidden to make this loan, and the decree of the chancellor on this conflict in the evidence will not be disturbed by this court.

HOLDEN, J., delivered the opinion of the court.

It appears that R. T. Ethridge and J. L. Hardee operated a turpentine business near Morton, Miss., as a partnership under the firm name of Ethridge & Hardee. Mr. Hardee lived in another part of the state, and the business was managed by Mr. Ethridge, who transacted all the business of the concern, paying off the hands, making contracts for turpentine rights, borrowing money at different times with which to run the business and pay the hands, and selling the products and purchasing the crude materials to be used in the business. Ethridge executed a note for one thousand dollars in the name of the firm to the Bank of Morton, received the money and used it in the regular course of the business of the partnership, the money being used to pay the debts of the concern contracted for turpentine rights, labor, and other necessary expenses in connection with the operation of the plant. When the partnership became insolvent, Hardee, the only solvent member of the concern, took over the assets and disposed of them, and refused to pay the note here in question, claiming that he was not individually liable for the amount of the note because he did not authorize its execution, but, on the contrary, that he had previously notified the Bank of Morton that he would not be individually responsible for any loan that it might make to the firm of Ethridge & Hardee. The Bank of Morton

admitted having received this notice from Mr. Hardee several months before the loan was made, but the bank introduced proof, showing that Mr. Hardee subsequently authorized this loan of one thousand dollars to the firm by telephone and otherwise, which was denied by Mr. Hardee.

The chancellor found in favor of Mr. Hardee in the lower court on this disputed question of fact, which finding we do not disagree with. But we disagree with the chancellor in his holding, under all the facts in this case, that Mr. Hardee is not liable for the amount of the note. It appears conclusively from this record that Mr. Hardee instructed Ethridge to borrow money for use in the business; and, further, it is shown that Ethridge was managing and conducting the business and had full authority to contract debts and borrow money to carry it on, and that this was done with the knowledge of the appellee Hardee. The money that was obtained from the bank was used to pay the debts of the firm in the regular course of its business, and it inured to the personal benefit of Hardee in paying the necessary expenses and debts of the business which otherwise he would have had to ultimately pay. The money was thus used in carrying on the business of this concern with the knowledge and consent of Mr. Hardee, and he was, according to his own testimony, notified of the existence of this loan to the firm at the time the money was being used to pay the debts incurred in the usual course of the business, and he did not then object or protest, but impliedly acquiesced therein, with full knowledge of the use that the money was being put to and the benefit he was receiving therefrom. Therefore Mr. Hardee by his conduct impliedly ratified the loan and became responsible for it as a partner in the business. We think it would be contrary to equity and good conscience to hold that a partner may escape liability, even though he had several months prior notified a bank to not loan money to his partnership,

when such loan is made to the partnership by his instruction, in the usual course of the business, and where he knowingly received the benefit of the money by using it to carry on the business and pay the debts of the firm for which this member would otherwise be individually liable. Am. & Eng. Enc. Law, vol. 22, pp. 140, 161; Story on Partnership, p. 223, sec. 37, p. 44; 30 Cyc. 477, 478, 485-487, 489-504; *Cummings* v. *Parish,* 39 Miss. 412; *Langan* v. *Hewett,* 13 Smedes & M. 122; *Sylverstein* v. *Atkinson,* 45 Miss. 81; *Anderson* v. *Wanzer,* 5 How. 587, 35 Am. Dec. 170.

In view of these conclusions, the decree of the lower court, dismissing the bill as to Mr. Hardee, is reversed, and a decree entered here for appellant.

*Reversed.*