375 So.2d 1012 (1979)
HOUSTON GENERAL INSURANCE COMPANY, hUGH d. nULL, aDAMS & nULL cONSTRUCTION Company, Partnership
v.
Dudley MAPLES, d/b/a Maples Gas Company, United Tire Corporation, and Mississippi Road Supply Company, Inc.
No. 51347.
Supreme Court of Mississippi.
October 3, 1979.
Rehearing Denied October 31, 1979.
*1013 Joe Clay Hamilton, Meridian, for appellant.
Goldman & Goldman, Thomas L. Goldman, Snow, Covington, Temple & Watts, E.L. Snow, Meridian, Riddick & Carpenter, B.L. Riddick, Jackson, for appellee.
*1014 Before PATTERSON, SUGG and WALKER, JJ.
PATTERSON, Chief Justice, for the Court:
This appeal is from a decree of the Chancery Court of Lauderdale County wherein Houston General Insurance Company, surety, Hugh D. Null, individually, Billy J. Adams, individually, Adams & Null Construction Company, a partnership, and Adams Construction Company, Inc., were held liable for materials and labor furnished pursuant to a public contract.
The original complainant, Dudley Maples, d/b/a Maples Gas Company, filed his complaint for payment of debts incurred by Hugh D. Null and Billy J. Adams, partners, d/b/a Adams & Null Construction Company, and Adams Construction Company, Inc. for petroleum products used in a construction project for Meridian Junior College. United Tire Corporation intervened and prayed for relief from debts incurred by the above defendants in the purchase of supplies and materials, as did Mississippi Road Supply Company seeking rental payments for the use of heavy equipment on the college improvement project.
The issues concern the liability of Houston General Insurance Company pursuant to a performance bond entered with Adams & Null Construction Company, partnership, for materials and supplies used in performing the public contract.
The trial court held the surety and Hugh D. Null, individually, Billy J. Adams, individually, Adams & Null Construction Company, jointly and severally liable to Maples Gas Company, United Tire Corporation and Mississippi Road Supply Company for a portion of the amounts they sought plus interest and costs.
In the spring of 1975 Hugh D. Null, contractor, and Billy J. Adams, owner of Adams Construction Company, entered into a partnership agreement to bid on an upcoming construction project of Meridian Junior College. Their bid was accepted and a contract entered between the partnership and the Mississippi Building Commission for improvements to Meridian Junior College. The bid for the contract was approximately $198,000 which the partners agreed to "split" between themselves on a fifty-fifty profit or loss basis. A performance bond was required before construction began on this, as other state contracts; the bond was procured by Adams & Null Construction Company, partnership, from Houston General Insurance Company.
Adams Construction Company, Inc., of which Billy J. Adams was president, possessed several pieces of heavy construction equipment. Adams was also a partner in the newly-formed Adams & Null Construction Company. Adams Construction Company, Inc., through Billy J. Adams, agreed with the partnership to rent some of the heavy equipment to it on an hourly basis, including the cost of fuel and compensation to the operator, the partnership providing supervision only for its use on the project.
The equipment was in the possession of Adams Construction Company, Inc. through a lease-purchase agreement with Mississippi Road Supply, hereinafter Road Supply. However, the agreement was in jeopardy, because the construction company was unable to meet the financial terms of its lease-purchase agreement with Road Supply.
Adams and a representative of Road Supply entered into a new agreement whereby Adams Construction Company, Inc. would rent the equipment from Road Supply. This agreement was prompted by Adams & Null Construction Company's, partnership, securing the contract for the college project which engendered the hope of Road Supply that it could receive some financial return from the heavy equipment.
Construction on the project began in the last week of May 1975, and on July 5, 1975, the partnership received its first progress payment for work that had been completed; the payment was deposited in the partnership account. Thereafter, Null drew several checks on the account in payment of partnership debts. The checks were returned because of insufficient funds, and upon investigation, Null discovered the *1015 funds had been embezzled by Adams. Thereafter, apparently a precaution, Null required the signatures of two persons on all partnership checks and obtained a second deed of trust on Adams' personal residence to cover the embezzled funds.
Road Supply had difficulty in collecting the rent and insurance on its equipment. On August 26, 1975, a meeting was held between Road Supply, Null, Adams and others. An agreement was reached whereby Null was permitted to rent the equipment from Road Supply at the same price that it had previously been rented to Adams Construction Company, Inc.
The partnership of Adams and Null was in disarray, but nevertheless Null continued to use the heavy equipment on the project until November 5, 1975, when it was returned to Adams. The construction under the contract was completed in June 1976.
While construction was under way, certain materials and supplies were allegedly provided by the complainant and intervenors for use in the project. Maples Gas Company provided petroleum products for use in the construction work, Road Supply rented the equipment to the contractors for use on the construction site, and United Tire Corporation supplied tires for the heavy equipment and made repairs to them as necessary.
The partnership did not pay the accounts to the materialmen, and Adams Construction Company, Inc. was insolvent and the partnership dissolved. This resulted in the present suit of the materialmen against the debtors as well as the surety on their bond.
The chancellor found from a preponderance of the evidence that Maples Gas Company had supplied material, primarily fuel, valued at $6,465.73 which was used in performing the contract. He also found that United Tire, intervenor, furnished materials and repairs to Adams & Null Construction Company in the performance of the contract between the 27th day of June 1975, and the 29th day of August 1975, inclusive, valued at $3,951.40. Road Supply, intervenor, was found to be entitled to a reasonable rental of $4,029.12 for the use of the heavy equipment on the project.
The appellants contend on appeal: (1) the indebtedness for materials or labor was not within the protection of the bond; (2) the indebtednesses were not those of the partnership; and (3) the materials supplied by the appellees were not consumed in the project it had bonded.
The bond is in accord with Mississippi Code Annotated section 31-5-1 (1972), Bond for payment of labor and materials, which provides in part:
... with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying labor or material therefor ...
The terms of the section are, of course, implicitly written into the bond. The terms of the bond are also explicit in that an obligation of the surety was to see that payment to all persons supplying labor or material to the contractor was made. This leaves a factual determination as to whether the labor was used or the material was consumed in the project. The argument is made that the fuel supplied by Maples Gas was not sold to the partnership, the equipment supplied by United Tire Corporation was not consumed on the project, and the rental of the heavy equipment was to Adams Construction Company, Inc., not the partnership, and suggests additionally that equipment rental would not be protected by the bond.
We review these assignments as they apply to the several appellees.
The contention is made by Houston General that fuel and lubricants furnished by Maples Gas were to Adams Construction Company, Inc., not the partnership which its bond protected. It points out that the invoices were made to "Adams Const. Co.," "Adams Construction," or to "Adams Constr.," and thus were not the obligation of the partnership because they were not specifically designated as such. The chancellor found, however, from ample evidence, that the fuel was consumed in the performance of the partnership contract. It was, *1016 therefore, within the terms of the bond, since the fuel was necessary for the equipment's operation which was essential to the construction. Seaboard Surety Co. v. Bosarge, 226 Miss. 482, 84 So.2d 517 (1956), and Western Casualty & Surety Co. v. Stribling Bros., 244 Miss. 12, 139 So.2d 838 (1962).
We cite also George T. Miller Construction Co. v. Standard Oil Co., 205 Ind. 509, 185 N.E. 639 (1933), which, although a highway contract was involved, expressed the principle that fuel for trucks and machinery is an essential for construction and its cost is recoverable from a performance bond. Presently, the determination by the chancellor that the fuel was consumed in the project was supported by evidence, and we cannot state that he was manifestly wrong in this finding. This assignment of error is without merit.
The judgment in favor of United Tire Corporation, intervenor, differs from the others inasmuch as it was for tires for the heavy equipment. The tires were not likely to be substantially consumed in the project, having the probability they could and would be used in other undertakings. Section 31-5-1, and bonds in accord therewith, have application only to labor and materials used or consumed in the specific bonded contract. Transamerica Ins. Co. v. Carter Equipment Co., 206 So.2d 632 (Miss. 1968), and Shuptrine v. Jackson Equipment & Service Co., 168 Miss. 464, 150 So. 795 (1933). These cases concern obligations under highway construction bonds, but they nevertheless express the rule, which by analogy applies here, that the bond for a specific contract does not extend to payment for equipment or major repairs with the capability of use on other projects.
Presently, the record does not reveal any evidence that the tires were consumed in this project. Instead, it shows they were used and repaired on the project, but remained on the equipment when it was finally repossessed. We are of the opinion the judgment obtained by United Tire Corporation must be reversed and remanded so that testimony might be taken concerning the tires' useful life and the portion thereof that was consumed on this contract.
The judgment in favor of Road Supply is based upon rentals for the use of the heavy equipment. The evidence does not indicate there was a rental-purchase agreement. Although it does disclose there was a previous lease-purchase agreement between Adams Construction Company, Inc. and Road Supply, it displays this agreement was terminated and replaced by a rental agreement with Adams or Adams Construction Company, Inc. brought about by anticipated revenues from the partnership contract. It was later renewed with Null, the partner, when Adams defaulted in his rental payments. The equipment was essential to improving the construction site as provided in the partnership contract, just as laborers would have been had the equipment not been used. In our opinion, it was essential and within the obligation of the performance bond. See Mississippi Road Supply Co. v. Western Casualty & Surety Co., 246 Miss. 510, 150 So.2d 847 (1963), and H.F. Vann Nieuwenhuyze v. Irby, 232 Miss. 474, 99 So.2d 651 (1958). We therefore think appellants' contentions in this particular are without merit.
The argument is next advanced that the obligations sued on are those of Billy J. Adams individually, or Adams Construction Company, Inc., and not those of the partnership. The appellants contend that Adams did not have authority to obligate the partnership, because he was not the agent of Null and therefore necessarily acted without Null's approval. We think this assignment of error has no merit, because it is well established that partners are jointly and severally liable for the debts of the partnership. Shemper v. Hancock Bank, 206 Miss. 775, 40 So.2d 742 (1949), and Bank of Morton v. Etheridge & Hardee, 112 Miss. 208, 72 So. 902 (1916). Moreover, the evidence reflects that Null was aware of Adams' purchases and hoped to profit thereby upon the successful completion of the contract.
*1017 There are other assignments of error, but our review reflects each of them reaches the same issues hereinabove discussed. We think they are similarly without merit.
The decree of the chancellor is affirmed as to Mississippi Road Supply Company and Maples Gas Company. It is reversed and remanded for further hearing as to United Tire Corporation.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.