UNITED STATES FIDELITY & GUARANTY CO. *v.* YAZOO COUNTY, FOR USE OF RINGS *et al.**

(Division A. Dec. 13, 1926. Suggestion of Error Overruled Jan. 10, 1927.)

[110 So. 780. No. 25887.]

HIGHWAYS. *Highway construction contractor's plant and camp equipment is not material supplied for or used in the work, for which surety is liable* (*Laws* 1918, *chapter* 217, *section* 1).

Laws 1918, chapter 217, section 1, requiring bond of contractor for construction of highway to be conditioned for payment of material used in the work, and giving any person furnishing material used in the work right of action on the bond, is designed for protection of those furnishing materials which enter into and become a permanent part of the improvement, or are naturally and necessarily consumed in the course of the performance of the work, and is not intended to protect those furnishing contractor's plant and camp equipment or material necessary to keep such equipment on an efficient basis.

---

*Corpus Juris-Cyc. References: Highways, 29CJ, p. 613, n. 70, 71, 73. As to nature of labor or materials which will support an action upon a contractor's bond, see annotation in 43 L. R. A. (N. S.) 162; L. R. A. 1915F, 951; 22 R. C. L. 632; 3 R. C. L. Supp. 1273.

Sept., 1926] U. S. Fid. & Guar. Co. *v.* Yazoo Co.      379

145 Miss.]      Brief for Appellant.

Appeal from circuit court of Yazoo county.

Hon. W. H. Potter, Judge.

Consolidated action by Yazoo county, for Use of Henry Rings and others, against the United States Fidelity & Guaranty Company. From an adverse judgment, defendant appeals. Reversed and remanded.

*Wm. M. Hall* and *Barbour & Henry,* for appellant.

Chapter 217, Laws of 1918, obliges the surety to "promptly make payments to all persons supplying *labor or materials*" for the work, and then gives the remedy to any one who has furnished labor or materials "used therein." The condition of the bond given in response to this statute is to "pay all persons furnishing said principal with material and labor in the course of the performance of said work."

It is our contention that articles such as shown here, forming a part of an ordinary equipment, even though worn out in the course of the work, are not covered by the word *materials.* None of the articles are, in their nature such as necessarily would be consumed, either actually or theoretically, so as to be regarded as "used in" the work or "furnished" in the "performance of the work." The test is not that the articles were worn out or consumed. To so hold would mean that the surety would be required to "set up" the contractor. Yet this is the holding of the lower court.

The decisions of this court and others to which we have access show the test to be whether the articles sold the contractor in the "performance of the work" were necessarily consumable in that work, such as coal to generate the power, dynamite to blast in excavations, gasoline to propel the machinery, feed stuff to keep the teams going. It does not include machinery, or articles which happened to be worn out, or partly or entirely consumed. There is no other way to give the word *material* used in the statute and the bond its true and ordinary meaning;

its "clear" meaning, as this court said in *Oliver Const. Co.* v. *Crawford,* 107 So. 877.   See *Standard Boiler Works* v. *Nat'l Surety Co.* (Ore.), 127 Pac. 573, holding that a bond similar to the one here does not cover any part of the contractor's working equipment; *U. S. Rubber Co.* v. *Am. Bonding Co.* (Wash.), 149 Pac. 706, holding that the surety was not liable for hose, belts, tubing, packing, gloves, boots and overcoats.

The authorities generally hold bonds, such as here involved, are intended to protect those who furnish *materials* which either enter into and become a permanent part of the improvement or are naturally consumed in the course of its construction.   They hold that the bond does not cover tools, machinery, or appliances which, though employed in the work, even though worn out, are of such character that if not consumed can be used on other work.   *Empire Co.* v. *Des Moines* (Io.), 131 N. W. 877, 132 N. W. 837; *Kansas City* v. *Youmans* (Mo.), 112 S. W. 225; *Thomas* v. *Commonwealth* (Mass.), 102 N. E. 428; *May* v. *Thomas Co.* (Ala.), 14 So. 768; *Construction Co.* v. *Haliburton* (Mo.), 258 S. W. 409; *Hamlin Motor Co.* v. *Miller,* 266 S. W. 99; *Fay* v. *Bankers Surety Co.,* Ann. Cas. 1915C 683; *Nye-Snyder Co.* v. *Bridges* (Neb.), 151 N. W. 942; *U. S.* v. *Morgan,* 111 Fed. 474; *Beals* v. *Fidelity & Dep. Co.,* 78 N. Y. S. 584; *Lutrell* v. *Ry. Co.,* (Tenn.) 105 S. W. 565; *Allen* v. *Elwert* (Ore.), 44 Pac. 832; *Evans* v. *Lower,* (N. J.), 58 Atl. 294; *Gilbert Hunt Co.* v. *Parry* (Cal.), 110 Pac. 541; *City of Alpina* v. *F. G. & S. Co.* (Mich.), 123 N. W. 1126; *Johnson* v. *Starett* (Minn.), 149 N. W. 6; *Hall* v. *Cowan* (Wash.), 98 Pac. 670; *McOrliffe* v. *Joogenson* (Wis.), 62 N. W. 706; *Heltzel* v. *Fidelity & Dep. Co.,* (Ark.), 271 S. W. 325.

The following authorities hold expressly that automobile tires and tubes are not covered by the bonds similar in meaning to the one involved here, and are directly in point against the allowance of a large part if not all of the claim of 555 Tire and Service Company for six hundred eighty-one dollars.   See, also, *Southern Construc-*

*tion Co.* v. *Haliburton,* 258 S. W. 409; *Hamlin Motor Co.* v. *Miller,* 266 S. W. 99.

The decisions of this court, so far as any opinions rendered show, in no way reason against our contention here. This court in the cases of *Nat'l Surety Co.* v. *Hall-Miller Co.,* 104 Miss. 626; *U. S. F. & G. Co.* v. *Marathon Lbr. Co.,* 119 Miss. 802; and *Oliver Construction Co.* v *Dancy,* 102 So. 568, hold only that the bond is liable for labor and material furnished subcontractors, and in no way goes to the question of what constitutes *material,* as distinguished from working equipment.

The case of *Watkins* v. *U. S. F. & G. Co.,* 103 So. 224, holds a bond identical with the one involved in this case does not cover groceries and merchandise furnished a commissary of the contractor, which is operated in aid of his work and for profit. This court distinctly declined to follow the United States supreme court in the case of *Brogan* v. *Nat'l Surety Co.,* 246 U. S. 257, holding the bond liable for groceries, etc., furnished a boarding house of a contractor in the wilds of Wisconsin.

In *Standard Oil Co.* v. *Nat'l Surety Co.,* 107 So. 559, 143 Miss. 841, it was held that gasoline used in operating the machinery was covered by the bond. That holding in no way conflicts with out contention. Gasoline is necessarily and essentially a part of the material which was used and consumed in the work. It is like oil or dynamite.

In *Oliver Construction Co.* v. *Crawford,* 107 So. 877, 142 Miss. 490, this court held that while the statute was to be given a liberal construction, it will not be extended beyond the clear meaning of the terms used. The last case decided by this court on the question is *Union Indemnity Co.* v. *Wineman,* 108 So. 796, in which it was held that a contract provided that certain part of the profits were to be paid for the use of a machine used on the work was not covered by the statute.

We contend, therefore, that the articles involved here, constitute a part of the contractor's ordinarily standard

working equipment, adaptable to any work, and not by their nature consumed.

*H. B. Greaves,* for appellees.

Chapter 217, Acts of 1918, which is section 2447A et seq. of Hemingway's Supplemental Code, is practically a rescript of the federal statute on this same question, only a little more comprehensive. The federal statute will be found in 8 Fed. Statutes Ann. (2 Ed.), page 374.

There is no contention in the evidence, or anywhere else, about the fact that there articles were sold to the contractor for the purpose of being used in and about the construction of this highway under the contract, and that they were absolutely used up in the construction of this highway with the exceptions of the items disallowed by the court below.

The wording of the statute does not require that the material should be wholly consumed in the work. All that is required is that it shall be used about and during the construction of the work. See *Holton* v. *University Construction Co.,* 202 Mo. App. 672, 216 S. W. 134; *U. S.* v. *Aetna Ins. Co.,* 40 Wash. 78, 82 Pac. 171.

As to what class of material and work the United States supreme court has decided should be paid for under this law, see: *Brogan* v. *Nat'l Securty Co.,* 62 L. Ed. (U. S.) 703. In the above-mentioned case, among other things determined by the court were claims for groceries and provisions which were used by the contractor in running a camp necessary to be run in order to carry out his contract. This case was adverted to by Justice Eth-ridge in his opinion delivered in *Watkins et al.* v. *U. S. F. & G. Co.,* 103 So. 224, 138 Miss. 388. The court said the case there decided did not fall within the rule announced in the Brogan case.

None of the supplies in the instant case were furnished for a commissary where supplies were sold to the public, or even for a boarding house, but were for the actual use

on and in and about the construction of the road; therefore, the decision of the United States supreme court is an authority here. See, also, *Bank* v. *Parker et al.,* 109 So. 1; *Title Guaranty & Trust Co.* v. *Crane Co.,* 219 U. S. 24, 55 L. Ed. 72; *Royal Indemnity Co.* v. *N. Y. & Northern Granite & Stone Co.,* 210 Ohio St. Rep. 373, 12 A. L. R. 378; *U. S.* v. *Aetna Indemnity Co.,* 40 Wash. 87, 82 Pac. 171. *Chicago Lbr. Co.* v *Douglass and Security Co.,* 89 Kans. 308, 44 L. R. A. (N. S.) 843, held that lumber used in making forms for concrete structures provided for in the contract and specifications, which is largely consumed and rendered worthless, is material covered by the contract. See, also, *Avery* v. *Woodruff and Chaills et al.,* 36 L. R. A. (N. S.) 866.

Every one of these parties have their attorney's fees to pay and the bond distinctly provided that the surety agrees to pay all costs, attorney's fees incurred about the enforcement of this contract and a provision in the bond, in addition to requirement of the statute has been held good by this court. *Nat'l Surety Co.* v. *Hall-Miller Decorating Co.,* 104 Miss. 626; and *U. S. F. & G. Co.* v. *Lumber Co.,* 119 Miss. 902.

In addition, in an action on a bond given under the federal act, attorney's fees are allowable in favor of each claimant, who has become a party and recovers on his claim. *Title Guaranty Co.* v. *Puget Sound Engineering Works,* C. C. A., 9th Cir., 1908, 163 Fed. 168, 89 C. C. A. 618.

Cook, J., delivered the opinion of the court.

Four separate suits in the name of Yazoo county, for the use and benefit of Henry Rings, Graham Hardware Company, 555 Tire & Service Company, and Woodruff Furniture Company, were brought in the circuit court of Yazoo county against J. R. Parker and United States Fidelity & Guaranty Company, as his surety, for the purchase price of articles sold Parker while he was building

the Moores Ferry public road in Yazoo county, under contract with the county. The cases, by agreement, were consolidated and tried before the circuit judge without the intervention of a jury. The items sold to Parker were shown on itemized accounts filed with the declarations, and are admitted to be correct as to items, amounts, and credits. Judgment was rendered for each claimant against Parker for the full amount, and against the surety for practically all claimed, together with attorney's fees. Parker did not appeal, but the surety company has prosecuted an appeal from the judgments against it, and, the amounts being conceded to be correct, the only question presented for decision is the liability of the appellant.

The articles sold by appellee Rings cover wagons, leather, harness and gear, tools, automobile springs, pumps and tires, and gasoline, oil, and grease. Liability for the items of gasoline, amounting to ninety-seven dollars and seventy-seven cents, is conceded under the holding of this court in the case of *Standard Oil Co.* v. *National Surety Co.*, 143 Miss. 841, 107 So. 559. After allowing a credit of sixty dollars on the account as the value of the wagons and harness when the work was completed, the court gave judgment against the surety for the balance of the account.

The claim of the 555 Tire & Service Company covered automobiles tires (or casings) and inner tubes. After deducting from this claim five per cent. of the value of certain tires, on account of depreciation caused by uses other than those covered by the contract, and after also deducting fifty dollars as the value of the tires remaining when the work was completed, the court allowed the balance of this account, with fifty dollars attorney's fee and interest.

The Graham Hardware Company's claim covered iron stoves, tools, such as hammers, wrenches, shovels, picks, etc., bolts, nails, brick, lumber, mattresses, cooking utensils, and dishes. The defendant Parker the only witness, testified that the stoves, dishes, and cooking utensils were

used in the commissary, and some of them carried away and used on other work, the stoves being abandoned, and that all of these things were of little value when the work was completed, and that the tools were worn out on the work. The circuit judge allowed this claim in full, including interest and twenty-five dollars attorney's fee.

The claim of the Woodruff Furniture Company covered iron beds, mattresses, dishes, cooking utensils, iron stoves, anvils, blankets, bedsprings, tools, nails, wire, etc. The court disallowed the items of iron beds, as Parker testified that they were not worn out, but, credits on the account being applied to the first items, the court held that they were paid for, and the balance of the claim, including twenty-five dollars as attorney's fee, was allowed.

The defendant Parker testified, in substance, that, in order to hold his labor on the job, it was necessary for him to maintain a camp with boarding and sleeping facilities, and that a large part of the articles for which the surety was held liable was purchased for the equipment and maintenance of this camp, and in providing the usual standard equipment of contractors in road building; that it was purchased by him to supplement the equipment which he had when he went on the work; that it was used by him on this work, and such of it as was not worn out therein continued a part of his equipment when he left the work, but that most of it was worn out or of little value when the work was completed.

The statute under which the bond involved was executed as section 1, chapter 217 Laws of 1918, which reads, in part, as follows:

"That any person entering into a formal contract with this state, any county thereof, municipality therein or any political subdivision whatsoever therein, for the construction of any building or work or the doing of repairs, shall be required before commencing same to execute the usual bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying

386 U. S. Fid. & Guar. Co. v. Yazoo Co. [Sup. Ct.

Opinion of the Court. |145 Miss.

labor or material therefor; and any person who has furnished labor or materials used therein and wherefor payment has not been made, shall have the right to intervene and be made a party to any action instituted on such bond, and to have their rights adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claim and judgment of the obligee.''

It will be noted that the additional obligation which the surety is required by this statute to assume is that ''the contractor shall promptly make payments to all persons supplying labor or material'' for the work, and the persons who are given the right to assert a claim against the bond are those who have ''furnished labor or material used'' in the work, and it is the contention of the appellant that such of the articles here involved as formed a part of the usual and ordinary equipment of the contractor, even though worn out in the course of the work, are not covered by the words ''materials used in the work,'' since they are not such as would necessarily be consumed, either actually or theoretically, so as to be regarded as ''used in'' the work or ''furnished in the performance of the work.''

The statute which requires the bond of a contractor for public work to be conditioned for the payment for all materials used in the work, and provides that any person furnishing materials used in such work may maintain an action on such bond, is designed for the protection of those who furnish materials which either enter into and become a permanent part of the improvement, or which are naturally and necessarily consumed in the course of the performance of the work, and it was not intended to protect those who furnish the contractor's plant and equipment or who furnish the material necessary to keep such equipment upon an efficient basis. In determining the liability of the surety for such articles or equipment, the fact that they were partially or totally worn out, or consumed, on the particular work is not the test of the liability of the surety. If the contract is

sufficiently large, covering a long period, the heaviest machinery, such as steam shovels and dredging machines, costing many thousands of dollars, may be entirely worn out, but we know of no case holding that the surety would be liable for the purchase price of such equipment. If the surety should be held to be liable for the plant or equipment of the contractor because the same is worn out or rendered valueless on the work, then it necessarily follows that the surety must be held liable for the depreciation in the value of the machinery and equipment which is caused by its use on the work, for, to the extent of the depreciation caused by such use, the equipment has been consumed in that work. In such a case, the court would be required to determine, as the court below did in the case at bar, the value of such equipment when the work was finished and the amount of depreciation in such equipment caused by the use on the particular work. We do not think such is the intention or meaning of the statute requiring this bond.

In the case of *Oliver Construction Company* v. *Crawford,* 107 So. 877, 142 Miss. 490, this court held that while this statute was to be given a liberal construction, it would not be extended beyond the clear meaning of the terms used, and we do not think it can be extended to cover camp equipment or tools, trucks or automobiles, and tires therefor, or other machinery and appliances constituting the outfit necessary to enable the contractor to perform the agreed service. *Beals* v. *Fidelity & Deposit Co.,* 76 App. Div. 526, 78 N. Y. S. 584, affirmed in 178 N. Y. 581, 70 N. E. 1095; *Kansas City, Use of Kansas City Hydraulic Press Brick Co.,* v. *Youmans,* 213 Mo. 151, 112 S. W. 225; *United States, Use of Thomas Laughlin Co.* v. *Morgan* (C. C.), 111 F. 474; *American Surety Co.* v. *Lawrenceville Cement Co.* (C. C.), 110 F. 717; *Standard Boiler Works* v. *National Surety Co.,* 71 Wash. 28, 127 P. 573, 43 L. R. A. (N. S.) 162, and note; *United States Rubber Co.* v. *American Bonding Co.,* 86 Wash. 180, 149 P. 706, L. R. A. 1915F, 951.

The appellant concedes its liability for the items of gasoline, and it is likewise liable for the items of oil and other lubricants appearing upon the several accounts. While the proof does not show the fact, there are items of nails, lumber, and brick, and probably others which may have gone into the permanent improvement, thereby rendering the surety liable for such items. The judgment of the court below will therefore be reversed, and the cause remanded to be proceeded with in accordance with the views herein expressed.

*Reversed and remanded.*