SEABOARD SURETY COMPANY *v.* BOSARGE

No. 39877 January 16, 1956 84 So. 2d 517

*Morse & Morse,* Gulfport, for appellant.

*E. J. Ford, Jr.*, Gulfport, for appellee.

LEE, J.

W. K. Bosarge, doing business in the City of Pascagoula as Buster's Service Station, sued Seaboard Surety Company, a corporation, to recover on a surety bond. There was a verdict for the plaintiff in the sum of $1,146.00, and from the judgment entered thereon, the company appealed.

The case originated in this way: Chipley Realty Company of New Orleans, Louisiana, obtained a contract for the erection of 185 defense housing units in the City of Pascagoula. This contract was sublet for performance to Site Development Company of Biloxi, Mississippi. By the terms of Section 1 of their contract, Site agreed to furnish all material and perform all work as described in Section 2 thereof, namely, "To supply all labor, supervision, tools and equipment to complete the erection of 185 defense housing units in strict accordance with the plans and specifications of the Crawford Corporation and in accordance with the minimum property requirements of the FHA for the State of Mississippi." Other details as to the manner of the work and the time and method of payment are not necessary to be considered in the determination of this cause.

On September 13, 1953, Site executed its bond to Chipley, with Seaboard Surety Company as surety, which bond was according to the following tenor and effect:

"Whereas, the above bounded Site Development Company has entered into a contract with the Chipley Realty Company for supplying of labor, supervision, tools and equipment to complete the erection of 185 defense hous-

ing units: as is fully and at large set forth and described in the said contract aforesaid.

"Now therefore, the condition of the above obligation is such, that if the above bounded principal shall well and truly and in good, sufficient and workmanlike manner, perform or cause to be performed the said contract, and each and every, of the covenants, promises, agreements and provisions therein stipulated, and in each and every respect comply with the conditions therein contained, then this obligation to be void; otherwise to remain in full force and virtue."

The houses were prefabricated and it was necessary to erect them. On this improvement Site necessarily used two pickup trucks, a ton and a half stake body truck, a large G.M.C. truck-trailer, a dragline, a bulldozer, and a small Ford tractor. A Mr. Grant, the representative of Site, made arrangements with Bosarge to supply fuel and oil and make necessary repairs for this equipment on the project. Buster's Service Station was situated about a half mile away. Bosarge and his employees serviced the vehicles both at the station and on the project. Tickets therefor were issued at .the time. The originals were sent to Site, and the carbon copies were retained by Bosarge. The copies were introduced in evidence. Bills were sent to Site each month during the period of construction, and no question was ever raised in reference to their correctness.

The evidence by the plaintiff and his two witnesses was to the effect that the sales and services, represented by the tickets, were furnished for the heretofore described motor vehicles which were used in the erection of the houses. It was stipulated that the amount of such tickets aggregated $1,146.31.

An employee of Site, who kept the books, testified that this equipment, from time to time, was used from Sarasota, Florida, to New Orleans, Louisiana; that Site had another contract at the time; and that part of the

charges for gas and oil on the second contract was allocated to the job in Pascagoula. He frankly volunteered that he did not know whether this was honest or dishonest. He did not have all of the records, but he testified to only two items which appeared under the term erection, and that they aggregated less than $300.00. This evidence purported to deny that some of the sales and services furnished by the plaintiff went into this project.

Under Section 374, Code of 1942, the parties may insert in a bond for faithful performance such provisions and penalties as they may desire; but at all events, it covers labor and material, whether written in or not. The statute so declares, and it was expressly so interpreted in Linde Air Products Co. v. American Surety Co., 168 Miss. 877, 152 So. 292. In that case, where the bond provided for the payment of those who performed labor or furnished "equipment, supplies, and materials for use in the work under the contract" it was held that the bond was liable "for necessary repairs to the contractor's equipment and for the purchase of new tools and machinery necessary to enable the contractor to do the work contracted for".

 █ Site's contract, simply stated, required it to complete the erection of 185 housing units, and to that end, it was obliged to supply labor, supervision, tools and equipment. The surety guaranteed that the principal would well and truly perform the contract. The motor vehicles were necessary equipment for that purpose. If they functioned, fuel and repairs were essential. It would be idle to say that the houses could have been erected by merely having the vehicles on the ground and operators on them. They would not run on their own power. Fuel and repairs were a necessary complement to the vehicles and were within the full contemplation of both Site and its surety, and were therefore covered by the bond.

Watts v. Western Casualty & Surety Co., 210 Miss. 211, 49 So. 2d 255, in no way conflicts with this holding. That case involved an indemnity bond, indemnifying the obligee against loss or damage resulting from the failure of the principal to faithfully perform the contract to dredge and improve the drainage ditch and canal. Unaffected by the statutes, there was no liability for labor, material, equipment and supplies therefor. The opinion, on the assumption that Section 374, Code of 1942, applied, held that the bond, as written, extended coverage for labor and material only, and that rental and freight on equipment did not constitute labor and material. The question there was altogether different from the proposition now before the court.

■■■ The jury was properly instructed in effect that if they believed from a preponderance of the evidence that the plaintiff furnished repairs and supplies necessary for the maintenance and use of the machinery necessarily used in the erection of the houses, and that such repairs and supplies were necessarily used in the erection of the houses, then they would find a verdict for plaintiff in the amount which they found to be due therefor.

The defendant was given an instruction to the effect that if plaintiff furnished the repairs and supplies in the usual course of business, and without any understanding with Site, then they would find for the defendant. It was also given another instruction which informed the jury that the plaintiff had the burden of proving that the repairs and supplies were furnished to Site in attempting to complete the contract for the erection of the 185 housing units in question.

Thus the issue of fact as to whether the plaintiff, in legal effect, furnished the repairs and supplies, and the amount thereof, was properly submitted to the jury by the above mentioned instructions.

488

No prejudicial error appears in the record and the cause is therefore affirmed.

Affirmed.

*Roberds,* P.J., and *Arrington, Ethridge* and *Gillespie,* JJ. concur.