GREAT AMERICAN INSURANCE COMPANY *v.* BUSBY et al.

No. 42430 February 25, 1963 150 So. 2d 131

*White, Buntin & Martin,* Gulfport, for appellant.

*Daniel D. Guice,* Biloxi, for cross-appellant, James W. Booker.

*Rushing & Guice,* Biloxi; *Jones, Phillips & Watkins,* Dallas, Texas, for appellee, A. L. Busby.

*Ebb J. Ford, Jr.,* Gulfport, for appellee, Doussand Tool and Supply Company and Griffin Wellpoint Corporation.

KYLE, J.

This case is before us on appeal by Great American Insurance Company, surety on an indemnity bond executed by Trosper Construction Company, Inc., as principal, in favor of Midwest Constructing Company, as obligee, from a judgment rendered by the Circuit Court of Harrison County in favor of A. L. Busby and others, claimants, for rentals on heavy construction equipment

and labor and materials alleged to have been furnished to Trosper Construction Company, Inc., a subcontractor engaged in the execution of a portion of the work contracted for by Midwest Contracting Company.

As a background to this litigation, the record shows that a basic contract was entered into on September 2, 1959, between Busboom & Raugh and C. E. Fritch, a joint venture, and the United States of America, for the construction of 130 housing units at Keesler Air Force Base at Biloxi, Mississippi. Thereafter Busboom & Raugh and C. E. Fritch, the joint venture, subcontracted a portion of the work to Midwest Contracting Company, which in turn on September 24, 1959, subcontracted a portion thereof to Trosper Construction Company, Inc. The indemity bond executed by Trosper, as principal, in favor of Midwest, as obligee, was written by the appellant Great American Insurance Company, as surety. Trosper abandoned the subcontract in February 1960, and ceased all activity toward the completion of the job. The controversy between the parties in this suit involves the question as to the liability of Great American, as surety on the indemnity bond executed by Trosper to Midwest, for the payment of claims filed by Busby and the other claimants against the surety company for equipment rentals, repairs and repair parts, small tools and other supplies furnished by the claimants to Trosper prior to the abandonment of the subcontract.

The original declaration in this cause was filed on behalf of A. L. Busby, as plaintiff, on the 26th day of July 1960 against Trosper Construction Company, Inc., and Great American Insurance Company, as defendants. The declaration set forth the fact that Trosper Construction Company, Inc., had subcontracted from Midwest Contracting Company a portion of the work to be performed under the basic contract mentioned above, and that Great American Insurance Company was the surety on Trosper's indemnity bond; that in

furtherance of the subcontract agreement between Trosper and Midwest an equipment lease agreement was entered into on October 15, 1959, between the plaintiff and the defendant Trosper whereby the plaintiff leased to Trosper certain equipment necessary to the performance by Trosper of its subcontract with Midwest; that plaintiff furnished said equipment to Trosper as provided in said agreement; that sometime during the month of February 1960 Trosper abandoned the performance of his subcontract with Midwest; and that there remained due and unpaid to the plaintiff for rental on said equipment and for services and materials furnished, the amount of $10,738.99. An itemized statement of the account was attached as an exhibit to the plaintiff's declaration. The plaintiff further alleged that under the terms and provisions of Section 376, Miss. Code of 1942, Rec., the plaintiff and other claimants similarly situated were authorized to commence action on the above mentioned bond. The complainant therefore demanded judgment against Trosper and Great American Insurance Company for the above stated amount with interest.

The defendant Great American Insurance Company filed its answer on February 24, 1961, in which there was incorporated a suggestion of nonjoinder of necessary parties. In its answer the defendant alleged that Trosper had abandoned the job during the month of February 1960, as stated in the plaintiff's declaration, and that under the terms of the bond executed by the defendant as surety the defendant had become indebted to Midwest Contracting Company for such loss as Midwest might sustain on account of Trosper's failure to fulfill its subcontract, and also to other parties for labor and materials, as provided by Section 374, Mississippi Code of 1942, Rec.; that, in accordance with Section 376, Mississippi Code of 1942, Rec., plaintiff and other parties similarly situated were authorized to commence

suit to enforce payment of any claims that they might have; and inasmuch as the plaintiff had actually filed suit, and Section 377, Code of 1942, Rec., limited claimants to one action, it was necessary that other claimants similarly situated be summoned to interplead and assert their claims, so that their claims might be finally adjudicated in the manner prescribed by law. The names and addresses of other claimants and the amounts of their alleged claims were stated in the answer.

By way of a special affirmative defense the defendant denied any and all liability to any of the above mentioned claimants for the reason that the indemnity type bond involved in the suit, a copy of which was attached to defendant's answer, created an obligation by Great American only to Midwest Contracting Company, obligee in the instrument, and such persons as had furnished labor and materials to Trosper, in accordance with Section 374, Miss. Code of 1942; and that none of the claimants mentioned in the answer had furnished any labor or materials to Trosper within the contemplation of the Mississippi statute. The defendant therefore asked that the matters of affirmative defense, as thus stated, be separately heard and disposed of before the principal trial of the cause, and in the event the defense was held to be sufficient in law, that plaintiff's declaration and all claims of intervenors be dismissed; that otherwise the cause proceed to trial with the defendant demanding strict proof of all claims.

Process was had on the various parties named in the suggestion of nonjoinder, returnable to the April 1961 term of the court; and other parties were permitted to intervene and file claims. The cause was heard at the April 1961 term of the court on the defendant's special affirmative defense; and at the conclusion of the hearing the Court overruled the defendant's motion to dismiss the claims of A. L. Busby, Dousson Tool & Supply Company and Griffin Wellpoint Corporation;

and the court ordered that the remaining issues be reserved for hearing upon the trial in chief.

The cause was tried by agreement of the parties, without a jury, at the August 1961 term of the court, and a final judgment was entered on August 17, 1961. Trosper did not defend the action.

In its judgment the court allowed the claim of A. L. Busby for rentals on equipment, transportation charges for return of equipment and repairs on pickup truck and jeep, in the amount of $10,738.99 with interest thereon from March 1, 1960, and the claim of Griffin Wellpoint Corporation for rental on equipment in the amount of $7,522.00 with interest thereon from April 1, 1960. The court rendered judgments against Trosper and Great American for the amounts stated. The court also allowed the claim of Morris King for rental on G.M.C. two-ton truck, $360.00 and miscellaneous supplies or repairs, $57.32, making a total of $417.32, and rendered a judgment against Trosper and Great American in favor of the claimant for the total amount of the claim. The court also allowed and awarded judgments against Trosper and Great American in favor of the claimants for other amounts as follows: Combel Hardware Store, for miscellaneous supplies in the amount of $34.29; Biloxi Battery Company, for miscellaneous repairs, repair parts and supplies in the amount of $249.78; Gauthreaux Machine Shop, for repairs and repair parts on equipment in the amount of $86.41; and Doussan Tool and Supply Company, for miscellaneous items of merchandise and supplies in the amount of $650.57, together with interest from January 1, 1960. Doussan's total claim was $844.14. The court disallowed several items for small tools and equipment in the total sum of $193.47 on the Doussan Tool and Supply Company's claim as against Great American, but rendered judgment against Trosper for the full amount.

The court ordered that the claims of Midwest Contracting Company, Coast Materials Company, Inc., and Dale Bollier be dismissed with prejudice as to Great American, and without prejudice as to Trosper; that the claims of Biloxi Stationery Company in the amount of $47.27, Southern Bell Telephone and Telegraph Company in the amount of $347.48, James W. Booker in the amount of $868.32, and the claim of Patterson's Auto Repair in the amount of $123.74, be disallowed as to Great American Insurance Company; and judgments were entered for the amounts of those claims against Trosper only.

The defendant Great American Insurance Company has appealed from the judgments entered against it as surety on the indemnity bond, and the claimant, James W. Booker, has filed a cross appeal from that part of the judgment disallowing his claim against Great American.

The attorneys for Great American Insurance Company have assigned and argued only two points as grounds for reversal of the judgment of the lower court: (1) That the court erred in overruling the special affirmative defense set forth in the appellant's answer, wherein the appellant denied all liability to the plaintiff and the other claimants on the ground that the bond sued on was an indemnity bond creating an obligation to Midwest, as obligee, only, and that none of the claims for which payment was demanded of the appellant were for labor and materials furnished to Trosper under the subcontract referred to in the bond, or were within the coverage of the bond; and (2) that the court erred in entering its judgment of August 17, 1961, in favor of the above mentioned claimants against the appellant as surety on said bond.

The main question presented for our decision on this appeal is, whether the surety on the indemnity bond executed by Trosper Construction Company, Inc., as

principal, and Great American Insurance Company, as surety, in favor of Midwest Contracting Company, as obligee, on September 24, 1959, is liable for rentals for equipment or leased by Trosper from third parties for use by Trosper in the performance of his contract. The recitals of the bond involved in this controversy, after a statement in the usual form of the names of the parties, the amount of the bond, and the obligation to pay, are as follows: ''Whereas, the principal and the obligee have entered into a written contract, hereinafter called the Contract, a copy of which is or may be attached hereto, dated the 24th day of September 1959, for furnishing all labor, tools, and equipment required to (sic) the installation of sewer, water, gas and storm sewer as set out in Sections 28, 29, 30 and 32, of the contract specifications * * *.

''NOW, THEREFORE, the condition of the foregoing obligation is such that if the Principal shall indemnify the Obligee for all loss that the Obligee may sustain by reason of the Principal (s) failure to comply with any of the terms of the contract, then this obligation shall be void; otherwise it shall remain in force.''

It can be readily seen that the bond is an indemnity bond to indemnify Midwest Contracting Company for all loss that Midwest may sustain by reason of Trosper's failure to comply with any of the terms of the contract.

 ■ The general rule is that no right of action exists in favor of a materialman or laborer against the surety on a private contractor's bond conditioned merely to indemnify and save harmless the owner from any pecuniary loss resulting from the breach of any of the terms of the contract between the contractor and the owner, since such bond is not intended for the benefit or protection of the third parties, but merely to indemnify the owner. 9 Am. Jur., Building and Construction Contracts, Sec. 98.

The rule has been modified by statute so as to provide protection for persons furnishing labor or material under such contract.

Section 374, Miss. Code of 1942, Rec., provides as follows: ''When any contractor or subcontractor entering into a formal contract with any person, firm or corporation, for the construction of any building or work or the doing of any repairs, shall enter into a bond with such person, firm or corporation guaranteeing the faithful performance of such contract and containing such provisions and penalties as the parties thereto may insert therein, such bond shall also be subject to the additional obligations that such contractor or subcontractor, shall promptly make payments to all persons furnishing labor or material under said contract; and in the event such bond does not contain any such provisions for the payment of the claims of persons furnishing labor or material under said contract, such bond shall nevertheless inure to the benefit of such person furnishing labor or material under said contract, the same as if such stipulation had been incorporated in said bond; * * *.''

In this case no right of action in favor of the laborers and materialmen against the surety on the subcontractor's bond would have existed in the absence of the statute. By virtue of the provisions of the statute laborers and materialmen were third party beneficiaries under the bond. But lessors of equipment were not included in the coverage provided by the statute. That point has been definitely settled by the decisions of this Court in United States Fidelity & Guaranty Co. v. Yazoo County, 145 Miss. 378, 110 So. 780; McElrath & Rogers v. W. G. Kimmons & Sons, 146 Miss. 775, 112 So. 164, 680; and Watts v. Western Casualty & Surety Co., 210 Miss. 211, 49 So. 2d 255.

In United States Fidelity & Guaranty Co. v. Yazoo County, supra, the Court held that Laws of 1918, Chap-

ter 217, Section 1, requiring the bond of a contractor for the construction of a highway to be conditioned for payment of material used in the work, and giving any person furnishing material used in the work a right of action on the bond, was designed for protection of those furnishing materials which entered into and became a permanent part of the improvement, or were naturally and necessarily consumed in the course of the performance of the work, and was not intended to protect those furnishing the contractor's plant and camp equipment or materials necessary to keep such equipment on an efficient basis. In McElrath & Rogers et al. v. Kimmons & Sons, supra, the Court held that the bond required of contractors in public work by Chapter 217, Laws of 1918, did not make a contractor and his bondsmen liable on the bond for materials and equipment necessary for the contractor to have to perform the work, but only covered material and labor consumable in the work. The Court in that case, after discussing the opinions rendered in the case of United States Fidelity and Guaranty Co. v. Yazoo County, supra, and Oliver Construction Company v. Crawford, 142 Miss. 490, 107 So. 877, said: "It will be seen from these decisions that the law does not extend to the equipment necessary to perform the work, which the contractor is expected to have for the performance of the work under contract, nor to repairs to the equipment, nor does it extend to money loaned to a subcontractor with which to pay for labor and materials."

In Watts v. Western Casualty Insurance Company, supra, the obligation of the contractor's bond in suit was substantially the same as the obligation of the bond in the case that we have here. The question presented for the Court's decision was whether the claimant had the right to recover of the surety on the contractor's bond for rental and freight on a dragline and light plant used by the contractor in dredging and improving

50

a ditch and canal in the Elam Creek Drainage District in Alcorn County. The Court held that the rental and freight on the equipment were not within the coverage of the bond. In its opinion the Court said:

"It may be stated in the outset that no facts are alleged in the declaration to show that appellant had any lien for his claim, and therefore, his right of recovery must be measured by the terms of the bond itself, or by the terms of the bond as affected by controlling statutes. It is manifest that the bond itself, unaffected by controlling statutes, is merely an indemnity bond indemnifying the obligee against loss or damage resulting from the failure of the principal to faithfully perform the contract, and that no liability thereunder arises for labor, material, equipment, and supplies furnished in the work of construction, and hence there arises no liability for rental and freight on equipment such as the dragline and light plant in question. This leads us to a consideration of the question as to whether or not rental and freight on equipment are within the coverage of the bond as affected by any applicable statutes. The statutes necessary to be considered in this connection are Sections 374, 8041, and 9014, of the Mississippi Code of 1942. * * * Section 8041 has application only to contracts with the State Highway Commission, and therefore has no application to the case at bar. If either Section 374 or Section 9014 be applicable to the case at bar, then the provisions thereof will be deemed to have been written into the bond here in question * * *. Both Sections 374 and 9014 extend the coverage of the bond to labor and material only, and therefore whether the bond in question comes within either of said sections the same result would follow. That rental and freight on equipment are not within the coverage of the bond as affected by either of these two sections has been definitely decided by this Court in the case of McElrath

& Rogers v. W. G. Kimmons & Sons, 146 Miss. 775, 112 So. 164,680.''

The last case in which this Court has been called upon to consider the question of liability of the surety on a contractor's bond for the payment of claims based on equipment rental or transportation of equipment is Western Casualty & Surety Co. v. Stribling Bros. Machinery Co., (Miss. 1962), 139 So. 2d 839, which was decided by this Court several months after the rendition of the judgment appealed from in this case. In that case the Court held that the surety on a performance bond which guaranteed the contractor's performance and completion of the work free from liens and claims, and which incorporated therein the contract wherein the contractor agreed to perform labor and services and supply materials, tools and equipment, and to notify the owner of any liens or claims and discharge them, was not liable to suppliers for claims based on equipment rental or transportation of equipment, but was liable for claims for gas and oil and ordinary, necessary repairs to equipment used in the performance of the contract.

It is argued, however, on behalf of the appellees, A. L. Busby and Griffin Wellpoint Corporation, that the contract between Trosper and Midwest expressly provided that ''the subcontractor promises, covenants and agrees to furnish all labor, material, and equipment, service and supplies required to complete the job,'' and also ''to furnish a suitable performance bond;'' that the word ''equipment'' appears in the ''Whereas'' clause of the bond executed by Great American; and that this Court should hold, as the lower court held, that the bond guaranteed the furnishing of labor, tools and equipment, and the surety should be held liable for the payment of the appellees' claims for rentals on equipment; and the appellees' attorneys cite in support of their contention that the appellees were entitled to coverage under the bond the case of Seaboard Surety Co. v. Bo-

sarge, 226 Miss. 482, 84 So. 2d 517, wherein the Court held that, where a contractor on a housing project executed a performance bond to a realty company, conditioned on the faithful performance of the contractor's obligation to supply labor, supervision, tools and equipment for performance of the contract, fuel and necessary repairs supplied by a service station operator to the contractor's vehicles on the project were within the full contemplation of both the contractor and its surety and were covered by the bond.

But we think the Bosarge case is not controlling here. The bond in that case was a performance bond. The bond in this case is an indemnity bond and must be construed as such. The bond was conditioned to indemnify Midwest against any loss by reason of Trosper's failure to comply with the terms of his subcontract. The ''Whereas'' clause of the bond merely identifies the contract to which the indemnity applies. The bond is deemed to have had written into it by operation of the statute (Code Section 374, supra), an obligation for the payment of claims of persons furnishing labor and material under the contract. But neither the language of the bond nor the language of the statute indicates that there was an intention on the part of any of the parties or on the part of the Legislature that the bond should provide coverage for claims of third parties for rental and freight on equipment or repairs and upkeep of equipment rented to Trosper for use in the performance of his subcontract. The rule applied in the Watts case, supra, is clearly applicable to the facts in this case. The Court in its opinion in the Bosarge case made special reference to the Watts case, and the Court made it clear that it did not intend to disturb the holding of the Court in that case.

We hold that the surety on the indemnity bond in this case is not liable under the terms of the indemnity bond or the statute for the payment of claims for rentals

on equipment or transportation of equipment, or for repairs made on the equipment or parts used in making such repairs. And we think the trial court erred in overruling the special affirmative defense set forth in the answer of the appellant, Great American Insurance Company, as a defense against liability for the claims of A. L. Busby and Griffin Wellpoint Corporation, and in rendering judgment against the appellant, Great American Insurance Company, for the amount of Busby's claim of $10,738.99 for rental on equipment and repairs on pickup truck and jeep, and in rendering judgment against the appellant for the amount of Griffin Wellpoint Corporation's claim of $7,522.00, for rental and freight on equipment. The judgments rendered against the appellant, Great American Insurance Company, for those two items will therefore be reversed and judgment will be entered here in favor of the appellant. The judgment against Trosper for the full amount of each of the two claims will be affirmed.

The judgment rendered in favor of Morris King against Trosper Construction Company, Inc., and Great American Insurance Company in the amount of $417.32 will be affirmed as to Trosper and reversed as to Great American Insurance Company. The items for rent on the GMC 2-ton truck for the four months period beginning October 15, 1959, and ending February 15, 1960, and aggregating the sum of $360.00 will be disallowed as to Great American. We are unable to determine from the proof in the record whether the remaining items aggregating the sum of $57.32, evidenced by ticket charges for bolts, brass fittings, gasoline, and other miscellaneous supplies are for materials used and consumed on the job or for repair parts and replacements for equipment; and as to those items the cause will be remanded for further proceedings in which the items may be properly separated and allowed or disallowed in accordance with the principles announed in this opinion.

The claim of the Biloxi Battery Company amounting to $249.78, and the claim of Gauthreaux Machine Shop consist of many items, a number of which may be allowable, and a number of which may not be allowable. A considerable number of the items on each of the two accounts appear to be items for repairs or repair parts for equipment, and under the rule stated such items should be disallowed as claims against Great American. Other items on the two accounts may be for labor and materials used and consumed in the construction of the buildings and properly allowable as claims against the surety on the bond. Whether they are allowable or not cannot be determined from the proof in the record, and the judgments of the circuit court against Great American for the two amounts stated will be reversed, and the cause remanded for further proceedings.

The account of Doussan Tool & Supply Company for the sum of $844.14 consists of numerous items of supplies, including an electric drill, utility saws, crosscut saw handles, claw hammers, paint brushes, wire rope, rubber hose, and other miscellaneous items. The court allowed $650.57 of the amount of the account, and disallowed $193.47 of the amount of the account, but rendered judgment against Trosper for the full amount. Some of the items embraced in the account which were allowed by the trial judge appear to have been items for equipment and repairs on equipment. The proof in the record is insufficient to enable us to classify properly the items which make up the account, and the judgment allowing the claim against Great American Insurance Company in the amount of $650.57 will therefore be reversed and the cause remanded for further proceedings.

No appeal has been taken from the court's order in disallowing the claim of Biloxi Stationery Company in the amount of $47.27, the claim of Southern Bell Telephone and Telegraph Company in the amount of $347.48,

and the claim of Patterson Auto Repair in the amount of $123.74; and the judgment of the lower court disallowing those claims will be affirmed.

We think there was no error in the action of the trial judge in disallowing the claim of the cross appellant, James W. Booker, against Great American in the amount of $868.32 for replacement and repair parts and service charges for the repair of equipment used by Trosper in the performance of the contract. The claim, in our opinion, was properly disallowed as a claim against the cross appellee, and the judgment of the lower court will be affirmed on cross appeal.

Reversed on direct appeal and judgment rendered in part and reversed and remanded in part, and affirmed on cross appeal.

*Lee, P. J., and Ethridge, Gillespie and McElroy, JJ.,* concur.