**COATINGS MANUFACTURERS, INC.,
and Middle South Energy, Inc.,
Plaintiffs–Appellees,**

v.

**DPI, INC., and Delta Painters, Inc.,
Defendants–Appellants.**

No. 90–1513
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 18, 1991.

S. Robert Hammond, Jr., Nancy E.
Steen, Bryant, Colingo, Williams & Clark,
Hattiesburg, Miss., for defendants-appellants.

Charles E. Hughes, Green, Cheney &
Hughes, Jackson, Miss., for Middle South
Energy, Inc. and Coatings Mfrs., Inc.

Before KING, GARWOOD and DUHÉ,
Circuit Judges.

KING, Circuit Judge:

An unpaid equipment supplier filed statutory stop payment notices with the owner of a construction project pursuant to § 85–7–181 Miss.Code Ann. (1972) (Add. A.) (§ 85–7–181), which permits an unpaid subcontractor to bind funds owed to the contractor by the owner. In order to release the funds, Coatings Manufacturers, Inc. (CMI), the contractor, and the owner, Middle South Energy, Inc. (Middle South)[1],

---

1. Systems Energy Resources, Inc. is Middle      South's successor in interest. For ease of refer-

filed this diversity action in federal district court. They sought a judgment against DPI, Inc. (DPI), the equipment supplier, and Delta Painters, Inc. (Delta Painters), the subcontractor, declaring that § 85–7–181 is not applicable to equipment rentals. The district court granted partial summary judgment in favor of the plaintiffs, concluding that the stop payment notices were invalid because the statute did not apply to equipment suppliers. Because we find no error in the district court's application of Mississippi law, we affirm.

## I. BACKGROUND

In 1985, Delta Painters, a subcontractor, and CMI, the general contractor, entered a joint venture known as Delta–CMI. Delta–CMI contracted with Middle South, the owner, to paint at the Grand Gulf Nuclear Station construction project in Mississippi. DPI, a separate corporation, furnished painting equipment to Delta–CMI for use on the project. Delta–CMI submitted monthly invoices to Middle South for labor, materials, and equipment rental.

In February of 1983, Delta Painters assigned its rights under the Middle South contract to CMI and ceased work at the project. At the time of the assignment, Delta–CMI owed DPI rental fees for equipment. Following the assignment, CMI continued to rent equipment from DPI and to submit monthly charges to Middle South. Middle South paid CMI the equipment rental charges on a "dollar for dollar" basis.

DPI, however, did not receive payment from CMI and delivered a stop payment notice to Mississippi Power & Light Company, agent for Middle South, for $65,720.95—the amount of the equipment rental for the months of January through May 1983. DPI delivered a second stop payment notice to Mississippi Power & Light Company for $214,000, the total for the equipment rental. DPI issued these stop payment notices pursuant to § 85–7–181, which permits a subcontractor to claim a lien against funds owed to the contractor by filing a stop payment notice with an owner holding such funds.

Following receipt of the stop payment notices, Middle South obtained a letter of credit from CMI's bank in Louisiana to guarantee reimbursement of any amount up to $214,000 that Middle South might be required to pay to DPI. After receipt of this letter of credit, Middle South continued to pay all sums that it owed to CMI under the contract. CMI and Middle South filed this suit in federal district court in order to obtain a declaratory judgment that the statutory stop payment notices were invalid. DPI counterclaimed for the amount of the equipment rental. The district court granted partial summary judgment in favor of CMI and Middle South, finding that § 85–7–181 applies only to services or supplies actually incorporated into the structure and cannot be invoked by a supplier of rental equipment. The case was declared inactive following the bankruptcy fillings of CMI, DPI, and Delta Painters, but was reactivated on April 30, 1990. On May 29, 1990, the district court certified the partial summary judgment granted in favor of Middle South and CMI as a final judgment, and this appeal followed.[2]

## II. ANALYSIS

Both parties contend that the plain language of Mississippi's stop payment notice statute supports their position. DPI also observes that the contract between Delta–CMI and Middle South provided a schedule for the payment of equipment rentals and contends that we should therefore interpret the Mississippi statute more broadly. Finally, DPI contends that the statute must be interpreted in light of the equitable principles of the construction trust fund doctrine. Under the construction trust fund doctrine, a contractor is deemed to hold funds paid by the owner in trust for the benefit of subcontractors. DPI argues that we should interpret the statute broadly because the policy underlying the stop

ence, we refer throughout to the owner-appellee as Middle South.

2. Because of its bankruptcy, CMI is not participating in this appeal. We refer hereafter to the defendant-appellants collectively as DPI.

payment notice statute and the construction trust fund doctrine favor payment of the subcontractor and such payment is not detrimental to the owner's property rights.

Middle South argues that Mississippi case law interpreting similar language in other construction lien statutes supports its position that a supplier of rental equipment cannot claim the benefits of the stop payment notice statute. Both parties admit, however, that Mississippi has not resolved the specific question of whether a supplier of rental equipment can claim the benefit of the stop-payment notice statute. Middle South disagrees that the contract required payment of the equipment rental, and argues that the terms of the contract are not relevant to our interpretation of § 85–7–181. Middle South also contends that Mississippi does not recognize the construction trust fund doctrine. Finally, Middle South asserts that DPI's claim for equipment rental is time barred, and that the Mississippi stop payment notice statute is unconstitutional.

■■■ On review of a grant of summary judgment, we apply the same substantive standard as the district court, which is whether a genuine issue exists concerning any material fact and, if not, whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *City of Madison, Miss. v. The Bear Creek Water Ass'n, Inc.*, 816 F.2d 1057 (5th Cir.1987). The facts in this case are essentially undisputed, and we review solely to determine whether Middle South was entitled to judgment as a matter of law. When issues of state law are complex and not clearly controlled by statute or decision, we give great deference to the district court's interpretation of the law of the state in which it sits. *Acree v. Shell Oil Co.*, 721 F.2d 524, 525 (5th Cir.1983); *Mitchell v. Random House, Inc.*, 865 F.2d 664, 668 (5th Cir.1989). Because the Mississippi court has not resolved the question of whether a supplier of rental equipment can validly effect a stop payment notice, we examine the language of the statute, and if unclear, other Mississippi statutes and case law to determine how the Mississippi Supreme Court likely would interpret the statutory language were the question presented to it. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 79, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

## A. Plain Language of the Statute

■■ Section 85–7–181 states in pertinent part:

> When any contractor or master workman shall not pay any person who may have furnished materials used in the erection, construction, alteration, or repair of any house, building, structure, fixture, boat, watercraft, railroad, railroad embankment, the amount due by him to any subcontractor therein, or the wages of any journeyman or laborer employed by him therein, any such person, subcontractor, journeyman or laborer may give notice in writing to the owner thereof of the amount due him and claim the benefits of this section. . . .

DPI argues that it is a person who furnished materials (equipment) used in the construction of a structure. Middle South, on the other hand, contends that in order to fall under the statute a person must furnish materials actually incorporated into the structure. The right of a subcontractor to assert a lien against the owner, Middle South observes, is in derogation of the common law, which made the subcontractor merely a general creditor of the contractor and provided for no action against the owner. Middle South notes that the statute does not explicitly include suppliers of rental equipment and argues that we should not imply a right to assert a lien against the owner unless clearly supported by the statutory language. Because the statutory language does not clearly supports either party's position, we proceed to examine the relevant case law in order to determine how the Mississippi Supreme Court likely would resolve this question.

## B. The Applicable Case Law

Neither party has been able to cite controlling Mississippi authority on this issue. Middle South argued, however, and the district court agreed, that the Mississippi Supreme Court has construed language similar to § 85–7–181 to exclude equipment

rental. The district court and Middle South rely primarily upon *Great American Insurance Co. v. Busby,* 247 Miss. 39, 150 So.2d 131 (1963) (construing MISS.CODE ANN. § 374 (1942)). In *Busby,* a subcontractor sought to enforce an indemnity bond against the surety. The court observed that generally a materialman does not have an action on a bond to indemnify the owner against pecuniary loss. That rule had been modified, the court noted, by MISS.CODE ANN. § 374 (1942), which makes a materialman a third party beneficiary of a contractor's bond. That section in pertinent part states:

> When any contractor or subcontractor entering into a formal contract with any person, firm or corporation, for the construction of any building or work or the doing of any repairs, shall enter into a bond with such person, firm or corporation guaranteeing the faithful performance of such contract and containing such provisions and penalties as the parties thereto may insert therein, such bond shall also be subject to the additional obligations that such contractor or subcontractor, shall promptly make payments to all persons furnishing labor or material under said contract; and in the event such bond does not contain any such provisions for the payment of the claims of persons furnishing labor or material under said contract, such bond shall nevertheless inure to the benefit of such person furnishing labor or material under said contract, the same as if such stipulation had been incorporated into said bond....

The court concluded that the language "all persons furnishing labor or material under said contract" did not include lessors of equipment, and found that the point had been definitively settled. *Id.* 150 So.2d at 135 (citing *United States Fidelity & Guaranty Co. v. Yazoo County,* 145 Miss. 378, 110 So. 780 (1926); *McElrath & Rogers v. W.G. Kimmons & Sons,* 146 Miss. 775, 112 So. 164 (1927); and *Watts v. Western Casualty & Surety Co.,* 210 Miss. 211, 49 So.2d 255 (1950)).

The *Busby* court distinguished the case of *Seaboard Surety Co. v. Bosarge,* 226 Miss. 482, 84 So.2d 517 (1956). In *Bosarge,* the Mississippi Supreme Court concluded that a subcontractor who supplied rented equipment, fuel, and repairs to a contractor could recover on a bond guaranteeing the faithful performance of the contractor's obligation to provide "labor, supervision, tools and equipment to complete the erection of 185 defense housing units...." The court reasoned that the rented equipment was necessary to the faithful performance of the contract and therefore was covered by the terms of the bond. The *Bosarge* court found that *Watts v. Western Casualty & Surety Co.,* 210 Miss. 211, 49 So.2d 255 (1950), did not conflict with its decision. *Watts* involved an action on an indemnity bond, and the *Watts* court decided that rental and freight on equipment did not constitute labor or material within the contemplation of § 374—the Mississippi bond statute. The *Bosarge* court noted that under § 374 "the parties may insert in a bond for faithful performance such provisions and penalties as they may desire; but at all events, it covers labor and material, whether written in or not." *Bosarge,* 84 So.2d at 518. The court distinguished *Watts* because the bond in *Watts* did not include equipment rental. The *Bosarge* court concluded that the subcontractor in *Watts* had no action on the bond and was not covered by the language of § 374, which the court stated did not include rental and freight on equipment within the meaning of labor and materials. *Id.* 84 So.2d at 519.

The *Busby* court found that *Bosarge* was not controlling because the indemnity bond in *Busby,* unlike the performance bond in *Bosarge,* did not provide coverage for the claims of third parties for equipment rental. The *Busby* and *Bosarge* decisions are not in conflict. In both cases, the court concluded that the parties are free to cover suppliers of rental equipment under the terms of the bond, but unless they provide for such coverage, the statute does not include rental equipment within the meaning of labor and materials. *See also Carruth v. Standard Accident Ins. Co.,* 329 F.2d 690, 693 (5th Cir.1964) (finding that

Mississippi's bond statute does not include payment for equipment rentals).

DPI argues that unlike the bond statutes construed by *Busby* and *Bosarge*, a stop-payment notice statute does not give the subcontractor the right to claim a lien upon the owner's structure. Because any claim that a subcontractor has pursuant to a stop payment notice statute attaches only to funds being held by the owner, but which are due to the contractor, DPI argues that the stop-payment notice statute should be read more broadly than other lien statutes. DPI points us to no case, however, in which the Mississippi courts have relied upon this distinction in construing these statutes.

Middle South contends that *Busby* and the other cases cited above indicate that the Mississippi Supreme Court would interpret the similar language in the stop-payment notice statute not to include suppliers of rental equipment. The stop-payment notice statute refers to a "person who may have furnished materials used in the erection [or] construction [of a structure]" and the bond statute refers to "persons furnishing labor or materials under said contract." Middle South observes that these statutes not only employ similar language but are also part of one plan of protection and must be considered together. Middle South also observes that the Mississippi legislature adopted these statutes under a single bill as §§ 1, 2, and 3. *Laws of Mississippi*, 1918, Ch. 128 at p. 126, S.B. No. 424. *See Monroe Banking & Trust Co. v. Allen*, 286 F.Supp. 201, 207 (N.D. Miss.1968) ("It is quite clear that Sections 372, 373 and 374 are interdependent and must be considered together as one plan of protection."). We agree that the Mississippi Supreme Court's interpretation of the similar statutory language in the construction bond statute suggests that it would find that suppliers of rental equipment cannot invoke the protection of § 85–7–181.

### C. The Statute Considered in Light of the Contract

DPI contends that neither *Bosarge* nor *Busby* are relevant to our decision because they interpret the Mississippi bond statute

rather than the stop payment notice statute. DPI argues that the instant case differs from *Busby* because the contract between Delta–CMI and Middle South provided a schedule for the amount of rental payments (and the rental invoices determined, in part, the monthly amount paid to Delta–CMI). DPI also observes that the contract required the contractor to satisfy the owner that all expenses had been paid for which the owner might be sued before the owner was obligated to make final payment. Middle South argues that the paragraph concerning final payment is not applicable because Middle South did not contract directly with DPI, and a subcontractor does not have a cause of action at common law against an owner. Delta–CMI, therefore, was not obligated to assure Middle South that equipment rentals had been paid before Middle South was obligated to make final payment to Delta–CMI because the supplier of the rental equipment could not sue the owner. Furthermore, Middle South argues, the agreement between Middle South and Delta–CMI is irrelevant because the critical question is how the Mississippi Supreme Court would interpret the stop-payment notice statute and not the terms of the agreement.

We agree with Middle South that the terms of Delta–CMI's contract with Middle South are essentially irrelevant to our determination. We are not called upon to interpret the contract, but to decide whether an unpaid supplier of rental equipment can claim the benefit of Mississippi's stop-payment notice statute. The present controversy is distinguishable, as DPI contends, from those cases interpreting Mississippi's bond statute. The parties are free to enter a bond that provides for the payment of equipment suppliers. The bond statute only operates to ensure the protection of suppliers of labor and materials who otherwise would not be protected. Whether a party may obtain the benefit of § 85–7–181, however, depends entirely upon the statute and not the agreement between the parties.

### D. Construction Trust Fund Doctrine

DPI argues that we should interpret the stop-payment notice statute to include rent-

al equipment suppliers in order to do equity and effectuate the stop payment notice statute's underlying purpose of protecting subcontractors. DPI relies upon cases interpreting the construction trust fund doctrine. Some states by statute, and others by applying general equitable principles, treat sums paid by an owner to a contractor as a trust corpus held by the contractor for the benefit of the subcontractors. *See United Parcel Service v. Weben Industries, Inc.,* 794 F.2d 1005, 1008–09 (5th Cir.1986) (in some states the construction trust fund theory has been codified by statute, and in other states the doctrine has been based on equitable principles). Generally our cases interpreting this doctrine arise when a contractor declares bankruptcy and subcontractors argue that funds paid to the contractor were held in trust for the benefit of the subcontractors and did not become part of the bankruptcy estate. *Id.; Georgia Pacific Corp. v. Sigma Service Corp.,* 712 F.2d 962 (5th Cir.1983).

We can find no support, however, for the construction trust fund doctrine under Mississippi law.[3] Furthermore, as DPI admits, the construction trust fund doctrine is not directly applicable to the instant case. DPI argues, however, that the general equitable principles underlying the construction trust fund doctrine require us to interpret the Mississippi stop payment notice statute to include equipment suppliers as well as other materialmen and laborers. The underlying purpose of the stop payment notice statute, as well as the construction trust fund doctrine, is to protect subcontractors by placing certain obligations on persons holding funds for those subcontractors. DPI argues, in essence, that as a matter of fairness we should find that the stop payment notice statute treats suppliers of rental equipment the same as other materialmen and laborers. DPI also observes that requiring an owner to ensure that subcontractors are paid out of contract funds does not harm the owner because such funds are already due the contractor.

We are not called upon, however, to decide which interpretation would be most equitable. When presented with an unsettled point of state law, our role under *Erie R. Co. v. Tompkins,* 304 U.S. 64, 79, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), is to determine how the Mississippi Supreme Court would resolve the issue if presented to it. Mississippi has observed that any action by a third party subcontractor against an owner is in derogation of the common law, and the Mississippi Supreme Court has found that language similar to the language contained in § 85–7–181 does not include suppliers of rental equipment. Although absolute certainty is impossible when attempting to decide an unsettled point of state law, we discern no error in the district court's application of Mississippi law in the instant case.[4]

## III. CONCLUSION

For the forgoing reasons, we affirm the district court's grant of partial summary judgment in favor of CMI and Middle South.

AFFIRMED.

---

3. DPI observes that Mississippi has never rejected the construction trust fund doctrine. Neither, however, has it accepted that doctrine. Middle South observes that in *Georgia Pacific,* 712 F.2d 962, 968 (5th Cir.1983), we stated that the Mississippi lien statute was not "intended to create a constructive trust in favor of suppliers," and in *United Parcel Service v. Weben Industries, Inc.,* 794 F.2d 1005, 1008 (5th Cir.1986), we noted parenthetically that we have interpreted Mississippi law as not authorizing the construction trust fund theory. DPI points out, however, that in *Georgia Pacific* we did not completely reject the applicability of this theory under Mississippi law, but rather stated that even if § 85–7–181 could be construed as creating a lien or trust fund in favor of unpaid materialmen that the subcontractor in the instant case had not taken the steps necessary to perfect its lien. *Georgia Pacific,* 712 F.2d at 970. These Fifth Circuit cases, of course, are not conclusive, but DPI can point us to no Mississippi case authorizing the construction trust fund doctrine.

4. Because our resolution of this issue is dispositive of this appeal, we do not address Middle South's contention that DPI's claim for equipment rental is time barred, and that the Mississippi stop payment notice statute is unconstitutional.