## WILLIAMS *v.* TAYLOR.

Feb. 16, 1953

No. 38601 20 Adv. S. 22 62 So. 2d 883

*Landrum & Busby,* for appellants.

*Crisler & Crisler,* for appellee.

HALL, J.

J. O. Williams and Johnny May, doing business as a partnership under the name of Williams & May, and K. B. Starling and C. F. Black doing business as a partnership under the name of Starling & Black, and D. B. George, brought suit in chancery against Bill Baggett and J. D. Taylor and others seeking to enforce subcontractors' liens under Section 372, Code of 1942, for labor and materials in the construction of five houses in Glenwood Subdivision in or near the City of Jackson. The chancellor gave complainants a personal decree against Bill Baggett for the respective amounts due them but declined to give a decree against J. D. Taylor or to impose a lien upon any of the houses in question. From the latter action the complainants appeal.

Appellants contend that under the facts they are entitled to personal decrees against Taylor and a lien upon the houses pursuant to Section 356, Code of 1942, and that Taylor does not come within the protection of Section 372, and that the decree is contrary to the great weight of the evidence because, as they contend, there was no prime contract between Taylor and Baggett and that Baggett was merely an employee of Taylor, the owner of the lots.

Taylor was the owner of twenty lots in Glenwood Subdivision and on July 7, 1950, he entered into a written contract with Bill Baggett, a building contractor, by the terms of which Baggett agreed to construct a house and garage on each of said lots in accordance with plans and specifications attached to the contract and at least in accordance with minimum Federal Housing Administration requirements.

Baggett agreed to furnish all materials and perform all work called for in the plans and specifications and to provide all tools and appliances necessary for perfor-

mance of the work and to supply qualified and experienced artisans, workmen and foremen to carry out said work, and to obtain the necessary permits and sanctions of the proper authorities and to comply with the building and other requirements of such authorities. He also agreed to have at least one house and garage completed within five weeks and to complete at least one house and garage each week thereafter unless prevented by strikes, weather or other reasonable causes beyond his control; it was stipulated that a violation of this provision would entitle Taylor, at his election, to cancel the contract as to any houses upon which construction had not been commenced, such cancellation to be effected by giving Baggett written notice of same.

The contract price was $6,100.00 for each house and was to be paid after final approval of the completed structure by Federal Housing Administration, but the contract provided that there might be a deviation from the plans and specifications on any house in which event Baggett would do the extra work called for in any written order for such deviation and would be entitled to additional compensation for such extra work.

The contract further provided that at least six houses would be constructed thereunder and that thereafter Baggett would give Taylor at least five days notice before the commencement of construction on any particular house and that Taylor would have the right to cancel the contract as to such house by giving Baggett at least three days written notice of such intention prior to commencement of construction on such house.

Pursuant to said contract Baggett began the construction of houses and it soon developed that he was unable to finance himself. He appealed to Taylor to make advances to him as the work progressed. Taylor was the owner of a sawmill but had no experience in the building trade. He arranged with G. B. Sanders, a real estate agent who was to handle the sale of the houses as completed, to make periodic inspections of the work and

to furnish him estimates from time to time as to the amount of materials and labor which had gone into the work. On the basis of these progress reports Taylor made advances to Baggett in cash and materials from time to time. Because of the scarcity of certain materials and the advance in prices due to the outbreak of the Korean War the construction was costing more money than Baggett had anticipated and after full completion of two houses, the practical completion of the third house, and the partial completion of two other houses, Baggett became so heavily involved that he abandoned the job. Up to this time Taylor had assumed Baggett's debts to numerous subcontractors and material men, all of which he paid, but he denied that he ever assumed any of the debts owing by Baggett to the appellants herein, and, in fact, there is practically no dispute of the fact that he did not even know of their claims until November 17, 1950, and he received no stop notice pursuant to Section 372, Code of 1942, until November 26, 1950.

He notified Baggett of Baggett's breach of the contract and then obtained bids for completion of the two unfinished houses. The lowest bid was $2,120.00, made by one Hinkle, and he contracted with Hinkle to complete these houses. Adding this to what he had already advanced to Baggett, it appeared that his advances amounted to $194.27 more than the contract price with Baggett plus some extra work on one of the houses which had been done by Baggett. After notice of the claims of appellants Taylor paid nothing further to Baggett.

Appellants claim that the contract between Taylor and Baggett was abrogated by the acts of the parties and that thereafter Baggett was merely an employee of Taylor as a consequence of which Taylor is liable for the labor and materials furnished by them. The principal acts which appellants claim constituted an abrogation of the contract are that neither the first house nor any of the subsequent

houses were completed within the time limit stated in the contract, that there was a change in the contract as to the time and method of payment, and that the extra work on one of the houses was such a deviation from the contract as to nullify it. We do not agree with any of these contentions.

In the case of Chancellor v. Melvin, 211 Miss. 590, 52 So. 2d 360, numerous authorities were reviewed and we reiterated what had been previously held by this Court. Among the principles there stated and here applicable are these: (1) Under a building contract such as here involved subcontractors, laborers and materialmen, who have dealt only with the prime contractor, have no lien on the money owed by the owner to the contractor until the statutory stop notice is given in accordance with Code Section 372; (2) if nothing is then owing by the owner to the contractor, the subcontractors, laborers and materialmen have no lien on the property nor any valid claim against the owner for the debts owing to them by the contractor; (3) even though the contract does not require that the owner pay anything before completion of the job, the owner may nevertheless make advances to the principal contractor during the progress of the work in any method and at any time they may agree upon and he will be protected in so doing.

 Applying these principles and the terms of the written contract to the contentions of appellants, we find it practically undisputed, or at least established by the overwhelming weight of the evidence, that appellants dealt only with Baggett in the work they did and the materials they furnished, that Taylor knew nothing of their claims until November 17, 1950, and received no statutory stop notice from them until November 26, 1950, and that Taylor paid nothing to Baggett after November 17, 1950, and had then already overpaid him for the work he had done. On that date he owed Baggett nothing. He had a right to make advances to Baggett before completion of the work

570

and did make them. Under the terms of the contract he had a right to have extra work done on one of the houses. Nothing that Taylor did constituted an abrogation of his written contract with Baggett. He exercised no control over Baggett or over his equipment, employees or subcontractors and there is nothing to support appellants' contention that the relation of employer and employee existed between Taylor and Baggett. Taylor gave written notices to Baggett of his breach of the contract on November 25, 1950, and November 29, 1950, before he contracted with another party for completion of the unfinished houses, and the contract was not abrogated until the latter date. We conclude that the evidence abundantly supports the decree of the special chancellor who tried the case and the same will be affirmed.

Affirmed.

*McGehee, C. J.*, and *Holmes, Arrington* and *Lotterhos, JJ.*, concur.