NOATEX CORPORATION, Plaintiff

v.

KING CONSTRUCTION OF HOUSTON, LLC, et al., Defendants

Noatex Corporation, Plaintiff

v.

King Construction of Houston, LLC, et al., Defendants

Auto Parts Manufacturing Mississippi, Plaintiff

v.

King Construction of Houston, LLC And Noatex Corporation, Defendants.

Civil Action Nos. 3:11cv00137–SAA, 3:11cv00152–SAA, 1:11cv00251–SAA.

United States District Court, N.D. Mississippi, Western Division.

April 12, 2012.

Robert E. Kohn, Kohn Law Group, Inc., Los Angeles, CA, James C. Simpson, Jr., Nicole Collins Huffman, Wise Carter Child & Caraway–Biloxi, Biloxi, MS, Jennifer H. Scott, Wise, Carter, Child & Caraway–Jackson, Jackson, MS, for Plaintiff.

Terry Dwayne Little, Catherine Ashburn Hester, Daniel, Coker, Horton & Bell–Oxford, Oxford, MS, Richard C. Bradley, III, Daniel, Coker, Horton & Bell, Jackson, MS, for Defendants.

L. Christopher Lomax, Office of the Attorney General of Mississippi, Jackson, MS, for Intervenor.

### *ORDER*

S. ALLAN ALEXANDER, United States Magistrate Judge.

The court has before it numerous motions filed[1] in these three related cases. The first case, *Noatex Corporation v. King*

---

1. This order will address the following motions pending in the interpleader action, No. 1:11cv251: Noatex's Motion to Dismiss (Docket 13), Noatex's Motion to Dismiss

*Construction of Houston, LLC, et al.,* No. 3:11cv137, filed in this court on October 18, 2011, is a declaratory judgment action by which Noatex challenges the constitutionality of a Mississippi statute, Mississippi Code Annotated § 85–7–181 (1972), which establishes Mississippi's "Stop Notice" procedure. The statute allows a subcontractor or materialman [in this case, King Construction] to bind funds owed to a contractor [Noatex] by the owner of a project [Auto Parts Manufacturing Mississippi, Inc. (APMM) ]. Docket 1 in No. 3:11cv137. In a separate action filed in this court on November 30, 2011, *Noatex Corporation v. King Construction of Houston, LLC and Carl King,* No. 3:11cv152, Noatex sued King Construction and owner Carl King for breach of contract claiming damages in excess of $500,000. Docket 1 in No. 3:11cv152. The third related case, *Auto Parts Manufacturing Mississippi v. King Construction of Houston, LLC and Noatex Corporation,* No. 1:11cv251, originated as a state court interpleader action filed on November 15, 2011 in the Chancery Court of Lee County, Mississippi and was removed to this court on December 5, 2011.

Docket 1, 2 in No. 1:11cv251. APMM interpled funds owed to Noatex that APMM had withheld because of a Stop Notice issued to it by King Construction, and APMM now seeks dismissal from the interpleader action. Docket 39, 53 in No. 1:11cv251.[2]

*Facts*

APMM, a Mississippi corporation (Docket 29, p. 1), contracted with Noatex, a California corporation with its principal place of business in California (Docket 1, p. 3), to construct a factory for manufacturing automotive parts in Guntown, Mississippi. Noatex then hired King Construction, a Mississippi limited liability company, to provide labor and materials for part of the construction of the APMM facility. Docket 29, p. 1–2. It appears that King Construction and Noatex worked without issue from February 2011 through mid-June of that year[3] but in July, Noatex began questioning King Construction's invoices.[4] Docket 29, p. 2. Although the parties present different accounts of the events that resulted in the stop notice,[5] it is undisputed that King

Cross-claim (Docket 27), APMM's Motion to Dismiss/ Discharge (Docket 39) and Motion to Remand (Docket 50). In No. 3:11cv00137, the court addresses Noatex's Motion for Summary Judgment (Docket 7) and King Construction's Motion to Dismiss (Docket 47) and Attorney General's Motion for Joinder to Motion to Dismiss (Docket 53); also pending in that case are the following motions that are deemed moot with the entry of this order: Motion for Extension of Time (docket 18), Emergency Motion for Temporary Restraining Order (Docket 21) and Joint Motion for Discovery Suspension (Docket 38). Finally, in No. 3:11cv152, non-party Mitchell, McNutt & Sams, P.A., counsel for defendants, has filed a motion to quash a subpoena duces tecum served upon it by plaintiff Noatex.

2. Because all parties have consented to have a magistrate judge conduct all the proceedings in all three of these cases under 28 U.S.C. § 636(c), the undersigned has the au-

thority to issue this opinion and final judgments in the three cases.

3. King Construction admits that it received payment on invoices submitted for work performed from February 2011 through mid-June 2011 (Docket 29, p. 2), and Noatex does not allege any problems arising from this time period.

4. King Construction claims that Noatex requested "changes to the formatting and content" of the invoices and that the invoices submitted from August 2011 through October 2011 were drafted and formatted with the assistance of Noatex employees. Docket 29, p. 2–3. Noatex claims that it requested additional detail to support the invoices for work performed and receipts for materials purchased. Docket 8, p. 2 in 3:11cv137.

5. Noatex alleges that, via letter on September 15, 2011, it requested detail to support certain

Construction filed a "Laborer's and Materialman's Lien and Stop Notice" in the amount of $260,410.15 in the Lee County Chancery Court in Tupelo, Mississippi and served a copy upon APMM. Docket 1, p. 14–22 in 3:11cv137. On the date of service—September 23, 2011—APMM owed Noatex $179,707.40.[6] Docket 11. King Construction's Stop Notice filing froze the money owed to Noatex by APMM, and these three cases subsequently arose.

## Jurisdiction

■ This court has federal question jurisdiction over the declaratory judgment action, No. 3:11cv137, under 28 U.S.C. § 1331. Because Noatex has not sought injunctive relief to interdict the operation of the statute on a statewide basis (Docket 1, p. 1), a three-judge court is not required. "There is no requirement that a party seeking to avoid the application of an allegedly unconstitutional state statute request the convening of a three-judge court even where ... a declaration of the unconstitutionality of that statute is sought." *Mississippi Chemical Corporation v. Chemical Construction Corporation*, 444 F.Supp. 925 (S.D.Miss.1977).

This court has diversity jurisdiction under 28 U.S.C. § 1332 over the breach of contract action, No. 3:11cv152: Noatex is a California corporation with its principal place of business in Torrance, California (Docket 1, p. 3); King Construction is a Mississippi corporation with its principal place of business in Houston, Mississippi (Docket 1, p. Docket 17); Carl King is a citizen of Mississippi (Docket 1, p. Docket 17); and Noatex seeks damages in excess of $500,000. Docket 1, p. 1–2. APMM is not a party to the breach of contract action.

■ Even though the declaratory judgment and breach of contract actions were already pending in federal court on November 15, 2011, APMM chose to seek relief from its position of being between a rock and a hard place by instituting a state law interpleader action, under Rule 22 of the Mississippi Rules of Civil Procedure, in the Chancery Court of Lee County, Mississippi. Docket 2. Noatex removed the interpleader action on December 5, 2011 under 28 U.S.C. § 1441.[7] Noatex contends that this court has jurisdiction of the removed action under 28 U.S.C. § 1335,[8] the federal interpleader statute which requires only "minimal diversity," because, says Noatex, APMM is only a nominal party, and the real parties in interest—Noatex

invoices and that, rather than respond, King Construction retained counsel and served the stop notice. Docket 9, p. 3. King Construction responds that before the September 15, 2011 letter, numerous emails and communications had been exchanged. Docket 29, p. 3. King Construction alleges that Noatex's repeated assurances of payment induced it to perform further work, after which Noatex informed King that Noatex could not pay because APMM was delinquent in payments to Noatex; according to King, it was left with "little choice" but to file the stop notice. Docket 29, p. 2–4.

6. By the time APMM deposited funds with the Clerk of Court in the interpleader action, the total amount owed to Noatex was $260,410.15, and it is that amount which APMM placed in the registry of the court, and which is still held by the clerk as of the date of this Order.

7. Although 28 U.S.C. § 1446(b)(2) requires that all defendants join in the removal, the King defendants never did so. However, the joinder requirement is not a jurisdictional issue and is waived by APMM's failure to object to the procedural defect. *See, e.g., In re Beazley Ins. Co.*, 2009 WL 7361370 *4 (5th Cir. May 4, 2009).

8. The Notice of Removal cites 28 U.S.C. § 1332, however it is clear that Noatex intended to cite § 1335 because it refers to the term "real parties in interest," which would only be applicable under § 1335 (Docket 1), and later asserted § 1335. Docket 52.

and King Construction—are completely diverse. Docket 1, p. 1–2 in 1:11cv251. Shortly after removal, Noatex filed a Rule 12(b)(6) Motion to Dismiss the interpleader action for failure to state a claim.[9]

The federal courts have original jurisdiction over two different forms of interpleader actions: the first falls under 28 U.S.C. § 1335, "statutory interpleader," and the second under Rule 22 of the Federal Rules of Civil Procedure, known as "Rule interpleader." The two forms of action differ in the degree of diversity of citizenship required to sustain jurisdiction in federal court. The interpleader statute, 28 U.S.C. § 1335, confers jurisdiction over cases with only "minimal diversity," that is, diversity between two or more claimants rather than complete diversity between the stakeholder plaintiff and the defendant claimants. *Ohio National Life Assurance Corporation v. Langkau*, 353 Fed.Appx. 244, 249 (11th Cir.2009); *Southern Farm Bureau Life Insurance Co. v. Davis*, 2010 WL 1245024 (W.D.La. March 29, 2010). See also *Mid–American Indemnity Co. v. McMahan*, 666 F.Supp. 926, 927 & n. 4 (S.D.Miss.1987). Rule 22, on the other hand, does not provide an independent basis for jurisdiction; a rule interpleader action must be supported by some other source of jurisdiction, such as 28 U.S.C. § 1331 or 28 U.S.C. § 1332. *Ohio National Life Assurance Corporation v. Langkau*, 353 Fed.Appx. at 249; *Southern Farm Bureau Life Insurance Co. v. Davis*; *Mid–American Indemnity Co. v. McMahan*, at 927 & n. 4.

Noatex invokes § 1335, contending that there is sufficient diversity to support removal in this instance because Noatex and the King defendants are diverse from each other. The interpleader in this case, of course, was filed in state court as a state court form of action—not a federal one. Because stakeholder plaintiff APMM and the King defendants are both Mississippi residents for purposes of determining diversity, there is not complete diversity of citizenship between the parties as required by § 1332, the only possible jurisdictional basis for rule interpleader in this case. It is well established that "interpleader actions brought under state law in state courts and then removed to federal court must satisfy the requirements of rule interpleader, including complete diversity of citizenship." 113F Wright, Miller & Cooper § 3636, at 351–52 (2009). Because this interpleader action was not originally filed by APMM in federal court under 28 U.S.C. § 1335, but rather was filed in Mississippi state court under Rule 22 of the Mississippi Rules of Civil Procedure (Docket 2 in 1:11cv00251), and only *later* removed to this court, the complete diversity requirements of Rule 22 and § 1332 apply to this case.

In addition, removal under 1441(b) may only be invoked if "none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Moreover, "the balance of authority suggests that a party may not remove a case that could have been brought originally in federal court under § 1335 where there is not complete diversity." *Federal Insurance Co. v. Tyco International Ltd.*, 422 F.Supp.2d 357, 395 (S.D.N.Y.2006). See also *Mandalay Oil &*

---

9. Noatex argues that the interpleader action is improper because APMM has no reasonable fear of multiple liability: "Mississippi law creates an independent right for APMM to deposit funds into court if—but only if—Noatex were to sue APMM or King Construction were to sue Noatex. Miss.Code Ann. § 85–7–181."

Docket 14, p. 2, 4. No such actions have been filed to date. Because of the court's ruling on the jurisdictional question, the court need not address this dubitable argument. See 13F C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3636, at 367–68 (2009).

*Gas. LLC v. Energy Development Corporation,* 1998 WL 850531 *2 (E.D.La. Dec. 8, 1998). This court finds itself in accord with the "balance of authority" on this issue.

King Construction seeks remand of the interpleader action; its ground for remand is that complete diversity no longer exists because Noatex has taken positions that contradict its original assertion that APMM is a nominal party. Docket 50, p. 3. Noatex, on the other hand, contends that by waiting more than 30 days to object to removal, King Construction has waived any grounds for objecting except by showing that the case falls outside of this court's original jurisdiction. Noatex also takes the position that the motion to remand is meritless because the interpleader action could have been filed originally in this court under 28 U.S.C. § 1335. Docket 52, p. 1–2.

Although APMM clearly could have chosen to file the interpleader action in this court, it did not do so. Because the undersigned has determined that Rule 22—not § 1335—governs in this action, because there is not complete diversity between plaintiff stakeholder APMM and interpleader defendant King Construction, and because King Construction is a citizen of the State of Mississippi, the requirements of the removal statute were not met, and this court does not have jurisdiction over the interpleader action. Consequently, although not for the reasons asserted in APMM's motion, the Motion to Remand (Docket 50) will be GRANTED, and No. 1:11cv251 must be remanded to the Lee County Chancery Court. The clerk will refund the money deposited into the court registry. Because the case is being re-

manded to state court, this court need not address the remaining motions pending in the interpleader action: Noatex's Motion to Dismiss (Docket 13), Noatex's Motion to Dismiss Crossclaim (Docket 27),[10] and APMM's Motion to Dismiss/ Discharge (Docket 39).

*Noatex's Motion for Summary Judgment in No. 3:11cv00137*

■ After considering the motions, responses, replies, exhibits, and supporting and opposing authority, the court rules as follows on Noatex's Motion for Summary Judgment (Docket 7) in No. 3:11cv137. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact and "must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners,* 204 F.3d 629, 633 (5th Cir.2000), citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). Under Rule 56(e), the burden then shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Beck,* 204 F.3d at 633; *Allen v. Rapides Parish School Bd.,* 204

---

**10.** Noatex has moved to strike the cross-claim contained in King Construction's answer in the interpleader action. Docket 27. Because this matter is being remanded, the undersigned will not render a decision on this mo-

tion, however, this order does not prevent King Construction from seeking to amend in the related cases which remain pending in this court.

F.3d 619, 621 (5th Cir.2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir.1998).

Substantive law determines what is material. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248, 106 S.Ct. 2505. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Federal Savings and Loan, Ins. v. Kralj*, 968 F.2d 500, 503 (5th Cir.1992).

In the declaratory judgment action, Noatex challenges the constitutionality of Mississippi Code Annotated § 85–7–181, which allows a subcontractor [here, King Construction] to deliver notice to the owner of a project [in this case APMM] of its claim against the contractor [Noatex] and bind the funds owed to the contractor by the owner. Under § 85–7–181, funds owed to a contractor are frozen in the hands of the owner when a subcontractor issues a "Stop Notice" to the owner. The owner's obligation to withhold the funds arises upon service of the notice upon the owner. The statute states:

> When any contractor ... shall not pay any person who may have furnished materials, labor or rental or lease equipment used in the erection, construction, alteration, or repair of any ... building, structure, fixture ..., the amount due by him to any subcontractor therein, or the wages of any journeyman, rental or lease equipment supplier or laborer employed by him therein, any such person, subcontractor, journeyman, laborer or rental or lease equipment supplier may give notice in writing to the owner thereof of the amount due him and claim the benefit of this section; and, thereupon the amount that may be due upon the date of the service of such notice by such owner to the contractor or master workman, shall be bound in the hands of such owner for the payment in full, or if insufficient then pro rata, of all sums due such person, subcontractor, journeyman, rental or lease equipment supplier or laborer who might lawfully have given notice in writing to the owner hereunder, and if after such notice, the contractor or master workman shall bring suit against the owner, the latter may pay into court, the amount due on the contract; and thereupon all persons entitled hereunder, so far as known, shall be made parties and summoned into court to protect their rights, contest the demands of such contractor or master workman and other claimants; and the court shall cause an issue to be made up an tried and direct the payment of the amount found due in accordance with the provisions hereof; or in case any person entitled to the benefits hereof, shall sue the contractor or master workman, such person so suing shall make the owner and all other persons interested, either as contractors master workmen, subcontractors, laborers, journeymen, rental or lease equipment suppliers or materialmen, so far as known, parties to the suit (and any such party not made a party in any suit hereunder authorized may intervene by petition), and thereupon the owner may pay into the court the amount admitted to be due on the contract or sufficient to pay the sums claimed, and the court shall cause an issue to be made up and award the same to the person lawfully entitled; in either

case the owner shall not be liable for costs; but if the owner, when sued, with the contractor or master workman, shall deny any indebtedness sufficient to satisfy the sums claimed and all costs, the court shall, at the instance of any party interest, cause an issue to be made up to ascertain the true amount of such indebtedness and shall give judgment and award costs, and reasonable attorney's fees, according to the rights of the several parties in accordance herewith. In case judgment shall be given against such owner, such judgment shall be a lien, from the date of the original notice, and shall be enforced as other liens provided in this chapter. The owner shall not be liable in any event for a greater amount than the amount contracted for with the contractor.

A separate statute, Miss.Code Ann. § 85–7–197, provides a vehicle to record the Stop Notice and establish lien priority.[11] Although both statutes are part of the same statutory scheme for the protection of subcontractors and materialmen, the statutes operate independently, and there is no requirement that notice under § 85–7–181 be followed at any point by filing with the chancery court under § 85–7–197; the benefit of that statute for claimant is merely to establish the priority of any lien eventually found to exist on behalf of the claimant. In any event, Noatex only challenges the constitutionality of § 85–7–181. Using § 85–7–181, King Construction immobilized substantial sums of money that APMM owed to Noatex by *serving* the notice upon APMM. In addi-

tion, but insignificant to this action, King Construction provided an affidavit[12] and recorded its claim in the lis pendens record under § 85–7–197, establishing its lien priority.

Noatex argues that the interim deprivation of property that resulted from service of the Stop Notice was sufficient to trigger the need for procedural due process and that § 85–7–181 "lacks any of [the] minimum safeguards that due process requires to accompany such a substantial deprivation of property." Docket 9, p. 11–12. Noatex equates the effect of the Stop Notice provision of § 85–7–181 to that of the chancery attachment statutes that were found unconstitutional in *Mississippi Chemical Corp. v. Chemical Construction Corp.*, 444 F.Supp. 925 (1977).

In *Mississippi Chemical*, Mississippi Chemical sued Chemico and utilized Mississippi's chancery attachment statutes to attach debts owed by certain non-Mississippi corporations to Chemico. *Id.* Upon service of the summons and complaint, these corporations were required by the attachment statutes to withhold money owed to Chemico for contracts that were not negotiated or performed in Mississippi. *Id.* at 930–932. The attachment statutes did not require a court ordered writ of sequestration or garnishment, or even a showing of entitlement to the attachment. *Id.* at 93–9321. Bond was required only upon seeking to execute upon a default judgment. *Id.* at 932. *Id.* at 932. The attachment statutes did not provide for review of the propriety of the attachment

---

**11.** To record the stop notice claim in the lis pendens record, Miss.Code Ann. § 85–7–197 requires (1) reducing the claim for the lien to a writing and (2) notifying the owner in person or by certified mail, return receipt requested. After these two steps, notice may be delivered to the clerk of the chancery court to record the claim.

**12.** Section 85–7–197 requires a written description of "the basis of [the] claim and all of the parties thereto or to be affected by the lien, and such writing shall contain a description of the property sought to be bound, and it shall also set forth the rights claimed in the property to be bound and the person claiming the lien shall make an affidavit to the writing." Miss.Code Ann. § 85–7–197.

by a judicial officer or a mechanism for challenging the validity of the attachment before a trial on the merits. *Id.* at 932. Chemico challenged the Mississippi attachment in chancery statutes on due process grounds on grounds they failed to afford notice or opportunity for a hearing or provide other safeguards against erroneous deprivation of property. *Id.* at 928. Finding the attachment statutes unconstitutional, the court held that they violated "procedural due process, both on their face and as applied, in that substantial deprivations of property are effected without notice, opportunity for hearing or any other safeguards reasonably calculated to minimize the risk of loss or deprivation." *Id.* at 945.

King Construction responds that *Mississippi Chemical* does not apply in this case because § 85–7–181 is a statutory lien—not a prejudgment attachment—and because "Mississippi state and federal courts have repeatedly upheld the stop notice procedure as the only remedy for subcontractors seeking recovery for provided labor and materials." Docket 29, p. 5. King Construction argues that the Mississippi Court of Appeals, in evaluating the Mississippi Supreme Court's interpretation of the stop notice statute, found it to be a "lien" based on the following statement: "A judgment against the owner under § 85–7–181 operates as a lien commencing on the date the stop notice was served." *Service Electric Supply Co. v. Hazlehurst Lumber Co.*, 932 So.2d 863, 869 (Miss.Ct. App.2006). However, the court is not persuaded by this interpretation; the court of appeals clearly contemplated that it is the "judgment" obtained after following the stop notice statute procedures which creates the lien—not service or filing of the stop notice itself.

Further, designation of the stop notice provision as a "lien" does not preclude a finding that in practical effect it operates as an attachment. Furthermore, although the stop notice procedure has been referred to as a lien,[13] it does not operate in the same way as a traditional lien that encumbers real property. Rather, the stop notice procedure operates to seize construction funds owed to the contractor and impedes the use of the funds until the stop notice is withdrawn or the claim is decided on its merits. Black's Law Dictionary defines an attachment as "the seizing of a person's property to secure a judgment or to be sold in satisfaction of a judgment." The bottom line is that no matter what you call it, § 85–7–181 has the exact same *effect* as an attachment—immobilizing the contractor's property for an indeterminate period of time to secure payment to a subcontractor.

King Construction further argues that the stop notice is not a pre-suit attachment because "APMM could, at its peril, and subject to the lien, still pay those monies

---

**13.** In *Coatings Manufacturers, Inc. v. DPI, Inc.*, the Fifth Circuit held that the stop notice statute did not apply to equipment rentals. *Coatings Manufacturers, Inc. v. DPI, Inc.*, 926 F.2d 474 (5th Cir.1991). King Construction argues that the language used in the decision is consistent with an interpretation of a lien, rather than an attachment. Docket 29, p. 8–9. King Construction cites the following statement as evidence: " § 85–7–181 ... permits a subcontractor to claim a lien against funds owed to the contractor by filing a stop payment notice with an owner holding such funds." *Coatings Manufacturers, Inc. v. DPI,*

*Inc.*, 926 F.2d 474 (5th Cir.1991). Because the Fifth Circuit found that § 85–7–181 did not include suppliers of rental equipment, it did not address the constitutionality of the stop notice statute. *Coatings Manufacturers, Inc. v. DPI, Inc.*, 926 F.2d at 479. The court is not convinced that describing the process as "a lien against funds owed to the contractor" is evidence that the statute should be analyzed as a lien and not an attachment. Indeed, it is clear that § 85–7–181 is the subcontractor's or supplier's first step toward thereafter "claiming" a lien under the procedures set out in § 85–7–197.

to Noatex and no judicial action would be taken as to those specific funds." Docket 29, p. 10. This argument also fails. APMM was required to withhold the amount from Noatex or risk being required to pay out the amount twice—to both King Construction and to Noatex. Because the money was "bound in the hands" of the owner by § 85-7-181, in reality APM did not have discretion—without great cost to it—to withhold the $179,707.40 that was due to Noatex once the stop notice was served and filed on September 23, 2011.[14] Docket 7, Exhibit 4, p. 8.

The Supreme Court has determined that prejudgment garnishment of wages[15] and seizure of personal property in replevin actions[16] are prejudgment attachments that require due process evaluation. In contrast, Arizona's mechanic's lien statute withstood a due process challenge even though it did not contain certain procedural safeguards because the encumbrance placed on the real property by the mechanic's lien was not found to be a "taking of a significant property interest." *Spielman–Fond, Inc. v. Hanson's, Inc.*, 379 F.Supp. 997 (D.Ariz.1973), *aff'd mem.*, 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974). The distinction is found in the "continuous and uninterrupted physical possession of the property."

In support of the statute, the Attorney General argues that the stop notice is "much more akin to construction or mate-rialmen's liens than to a chancery attachment statute" and cites several cases in which courts have held mechanic's or supplier's liens did not amount to a taking of a significant property interest. Docket 35, p. 10–13. However, the mechanic's lien statutes that the Attorney General urges this court to consider created liens on real property and were found constitutional because effect of the lien was not to dispossess the owner of the property but rather to inhibit alienation or encumbrance of the property, such as in clouding title. See *Spielman–Fond, Inc. v. Hanson's, Inc.*, 379 F.Supp. 997 (D.Ariz.1973), *aff'd mem.*, 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974).

A contractor generally does not have any interest in the property that he has been hired to construct. He likely does not have physical possession and is not entitled to other tangible benefits that may flow from the ownership of property, such as the ability to borrow against it. He does, however, have numerous obligations, including the responsibility to pay subcontractors. It is clear that the statute was intended to provide a mechanism for subcontractors or materialmen to create a lien on the money owed by the owner to the contractor in the event that the contractor fails to pay. Absent the stop notice statute, "materialmen and laborers would be mere general creditors of the contractor." *Chic Creations of Bonita Lakes Mall v.*

---

14. The stop notice was issued in the amount of $260,410.15 (Docket 1, p. 14–22) but APMM owed Noatex only $179,707.40 on that date. Docket 11. Because of the court's ruling on the motion for summary judgment, the court need not address the correct amount bound by the stop notice.

15. In *Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1968), the Supreme Court found a Wisconsin statute permitting the prejudgment garnishment of debtor's wages unconsti-tutional, and in *North Georgia Finishing, Inc. v. Di–Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), it struck down Georgia's prejudgment garnishment statute, which allowed a creditor to obtain an *ex parte* writ garnishing a debtor's bank account.

16. In *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the Supreme Court struck down Florida and Pennsylvania replevin statutes that allowed a creditor to seize a debtor's personal property without prior notice or a hearing.

*Doleac Elec. Co., Inc.*, 791 So.2d 254 (Miss. 2000).

In this case, it is undisputed that Noatex earned the large sum of money that was withheld—$179,707.40. Nevertheless, Noatex has been completely deprived of the use of the money; it has been held beyond Noatex's control as a result of state action, *i.e.*, use of the procedures set forth by state statute. The funds are not available, for example, to make payment obligations to other subcontractors or to fulfill purchase obligations. The net effect of depriving Noatex of the use of money earned is the same as a prejudgment attachment, and, in the court's opinion, the freezing of the funds constitutes an interference with a significant property interest.

■ Where a significant property interest is affected, the requirements of due process attach, and even a temporary impairment to property rights is sufficient to warrant due process protection under the Fifth and Fourteenth amendments to the United States Constitution. *Connecticut v. Doehr*, 501 U.S. 1, 12, 111 S.Ct. 2105, 2113, 115 L.Ed.2d 1 (1991). In *Connecticut v. Doehr*, the Supreme Court struck down a Connecticut statute that allowed a prejudgment attachment of real estate without prior notice or hearing upon a showing of probable cause in intentional tort cases. In determining whether the state statute violated due process by authorizing the prejudgment attachment without prior notice and a hearing, the Court required

> first, consideration of the private interest that will be affected by the prejudgment measure; second, an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards; and third, ... principal attention to the interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any

ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections.

*Doehr*, 501 U.S. 1, 11, 111 S.Ct. 2105 (1991), citing *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

Under the first prong of the test, the Court found that the attachment in *Doehr* affected a significant interest in real property even though it did not amount to a complete, permanent deprivation of the property and, under the second prong, that the risk of erroneous deprivation was substantial. The low standard of proof required in the affidavit of probable cause and the inability to predict the outcome with precision because of the complex variables in intentional tort cases outweighed the procedural safeguards provided by a post-deprivation hearing. In applying the third prong of the test, the Court found that plaintiff had no existing interest in the defendant's real property before seeking the attachment—the only interest was an interest in the availability of assets to satisfy the judgment upon successful resolution of the tort action.

Just as in *Doehr*, the deprivation that resulted from King Construction's stop notice is not a complete, permanent deprivation; nevertheless, the interest affected—Noatex's right to a payment of a large sum of money it had earned on the project—is certainly significant and merits due process protection. It can be argued that King Construction's interest in the money bound by the stop notice is more concrete than the potentially more speculative interest in the property in *Doehr* because King Construction would presumably be paid out of the frozen funds that were due to Noatex. Despite this factor, the risk of erroneous deprivation without a pre-attachment notice and a hearing appears to

be even greater under § 85–7–181 than it was in *Doehr*. Under § 85–7–181, the funds are bound without the affidavit requirement that was present in *Doehr*; all that is required to freeze the funds under the statute is that the subcontractor "give notice in writing to the owner thereof of the amount due him." Section 85–7–197, which allows a claimant to *file* the stop notice with the chancery clerk, does require that it be accompanied by an affidavit containing a description of the claim, the parties affected, a description of the property and the rights claimed, but the likely merits of the claim are never considered, or even attested, before the binding of funds.

In *Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), the Supreme Court struck down a Wisconsin statute permitting the prejudgment garnishment of a debtor's wages without prior notice or a hearing on due process grounds. The statute allowed the court clerk, rather than a judge, to garnish wages at the request of the creditor's attorney, and the Court noted that wages are "a specialized type of property presenting distinct problems in our economic system." *Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337, 340, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). The withholding of construction funds is much like the garnishment of wages in that it dramatically impedes the progress of a construction project and potentially affects sums due other subcontractors or suppliers. Because the Mississippi stop notice statute does not even require proof of the probable validity of the claim, the risk of wrongful withholding is significant and potentially devastating, not only to the contractor but for the entire construction project, including other subcontractors or suppliers.

In contrast, the Supreme Court, declined to strike down a Louisiana statute on due process grounds that allowed a lienholder to seek the sequestration of disputed goods in an *ex parte* proceeding. *See Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). The statute, however, had significant presequestration safeguards built into it in that it required a creditor to present a fact-specific affidavit to a judge; required a creditor to post a security bond; required the judge to hold a post-deprivation hearing immediately; and allowed the debtor to regain interim possession of the property by filing a substitute bond. *Id.* 416 U.S. at 604, 94 S.Ct. at 1899. None of these safeguards are present in Mississippi's stop notice statute. No affidavit is required before the money is bound, and the affidavit that is required to record the stop notice does not require either "fact-specific" allegations or presentation to a judicial officer. No bond is required. No post-deprivation hearing is required. There is no provision to dissolve the attachment or release the funds at any time before bringing the claim to a resolution on the merits.

Noatex challenges the stop notice statute on its face and as applied. Docket 32, p. 2. The Attorney General argues that any deprivation of property is "*de minimis*" and that all applications of the statute cannot be found unconstitutional, as required. Docket 35, p. 10–12. In support of the statute, the Attorney General cites *Connolly Development, Inc. v. Superior Court*, 17 Cal.3d 803, 132 Cal.Rptr. 477, 553 P.2d 637 (1976), a 1976 California decision upholding California's stop notice statutes. The challenged California statute differs significantly from the Mississippi statute in that a bond equal to one and one-fourth times the amount of the claim was required by California and no bond is required by Mississippi.

Even if the reason behind the stop notice statute is that the Mississippi legislature concluded that the interests of materialmen and laborers could not be protected if prior notice and hearing were required, the stop notice statute fails to establish alternative safeguards of any kind. The Oklahoma Supreme Court determined that its similar statute was unconstitutional because it did not provide alternative safeguards "to establish the probable validity of the claim and to minimize the risk of wrongful withholding." See *Guy James Construction Company v. Oklahoma Dept. of Transportation*, 655 P.2d 553 (1982). The standard for due process, said the court,

> is meant to be flexible to allow protection of the rights of all parties involved. But in the absence of unusual circumstances, the statute must at a minimum provide for prior notice to the alleged debtor and a hearing appropriate to the nature of the case.

*Id.* The Mississippi stop notice statute provides neither.

Noatex further argues that there is no vehicle for challenging the validity of the freezing of funds, for any reason. Docket 32, p. 8, 14. King Construction responds that Noatex "chose to ignore the easiest route of challenging King's claim" and failed to avail itself of remedies available, specifically §§ 85–7–197 and 85–7–201. Docket 29, p. 6. Section 85–7–201 provides a penalty of forfeiture of the full amount claimed against a person who "falsely and knowingly" records a claim under § 85–7–197, to be recovered by an action instituted within one year of the filing. The statute also provides a right to seek expungement of the notice from the chancery court upon two days' notice. Both of these provisions put the burden upon the person whose funds have been frozen to institute a judicial action. Moreover, Noatex argues that § 85–7–201 applies only to the recording of the notice under § 85–7–197 and *not* to the

binding of the money under § 85–7–181. Even if that is not the case, a person may only obtain imposition of the penalty if it demonstrates that the notice was "false" and that the false claim was "knowingly" made. Although Noatex disputes that all of the money claimed by King Construction is actually due and owing, the fact of this disagreement does not necessarily mean that King Construction's disputed claim rises to the level of a "false" claim as that term is commonly understood in legal terms. In addition, the conjunctive requirement of falsely **and** knowingly, says Noatex, prevented it from taking advantage of this potential remedy. Noatex asserts that any notice issued with the assistance of an attorney, as in this case, would be precluded under this section. Certainly, the words of the statute must be tortured for the court to determine that § 85–7–201 provides a constitutionally acceptable remedy to Noatex.

The underlying, indisputably admirable purpose of the stop payment notice statute is to protect subcontractors by placing certain obligations on persons holding funds for those subcontractors, *Coatings Mfrs., Inc. v. DPI, Inc.*, 926 F.2d 474, 479 (5th Cir.1991). The court recognizes that the motivation behind enactment of the statute was the legitimate concern that persons who might not otherwise have a simple, cost-efficient means by which they may obtain payment for their labor or supplies be assured recompense. Still, the court is compelled to hold that Mississippi's stop notice statute violates due process by authorizing what is in practical effect the prejudgment attachment of funds without prior notice and a hearing, or an acceptable post-seizure remedy. Consequently, § 85–7–181 is facially unconstitutional, and Noatex's Motion for Summary Judgment is GRANTED. King Construction's stop notice is vacated in its entirety and has no

effect on the funds that have been withheld by APMM.

### King Construction's Motion to Dismiss in No. 3:11cv00137

■ King Construction additionally alleges that Noatex's due process claims were rendered moot when APMM deposited the withheld funds because "there are no longer any funds or property allegedly owed to Noatex held by APMM." [17] Docket 47, p. 3. Noatex responds that both Noatex and King Construction retain a continuing interest in the case because the parties assert competing ownership claims to the withheld funds (Docket 58, p. 5) and because it continues to be injured by the deprivation that resulted from the stop notice statute. Docket 58, p. 2. The court agrees. The deprivation that resulted from the operation of the stop notice statute was not abated when the money was deposited in the court registry. The possibility exists that, even with this favorable adjudication of the declaratory judgment action because of the possibility of appeal, the deprivation may persist. Certainly, a continuing case or controversy exists as a result of the operation of the stop notice statute. Therefore, King Construction's Motion to Dismiss (Docket 47) is DENIED.

### Conclusion in No. 3:11cv00137

Because the court has granted summary judgment in favor of Noatex and denied King Construction's motion to dismiss, and Noatex's complaint for declaratory relief does not contain any additional factual disputes (Docket 1), the declaratory judgment case, No. 3:11cv00137, will be DISMISSED with prejudice and a separate judgment entered reflecting that result. The following motions pending in the declaratory judgment action are deemed moot with the grant of summary judgment

and dismissal of the case: Motion for Extension of Time (Docket 18), Emergency Motion for Temporary Restraining Order (Docket 21) and Joint Motion for Discovery Suspension. Docket 38.

### Motion to Quash Subpoena in 3:11cv152

In the breach of contract action, Mitchell, McNutt & Sams, P.A. (MMS), general counsel for APMM and counsel for APMM in the interpleader action, seeks to quash a subpoena served on it by Noatex because

(1) Noatex failed to comply with L.U.Civ.R. 45(d), (2) it seeks documentation that is protected by the attorney-client and/or work product privilege, as evidenced by Movant's privilege log submitted herewith, (3) it seeks documentation that is irrelevant to the subject matter of this lawsuit; (4) it is overbroad as to time frame and subject matter; and (5) it is done for the purpose of annoying and harassing Movant.

Docket 29, p. 2 in 3:11cv152.

MMS claims that Noatex did not attempt to "meet and confer" to discuss the requests for electronically stored information. Rule 45(d) requires that "[p]arties issuing a subpoena duces tecum for electronically stored information from non-parties must attempt to meet and confer with the non-party (or counsel, if represented) and discuss the same issues with regard to requests for ESI as set out in L.U.CIV. R. 26." However, the rule does not require that the party serving the subpoena meet and confer before issuing the subpoena.

Noatex responds that it will meet and confer with MMS before it seeks any order to compel compliance with the subpoena and asserts that MMS's arguments are not properly before the court because MMS did not comply with L.U.CIV. R. 37(a) before it moved to quash the subpoena.

---

**17.** The undersigned has considered the Attorney General's Motion for Joinder to Motion to Dismiss (Docket 53) and that motion is therefore, GRANTED.

Docket 33, p. 2–3. Local Rule 37(a) requires that counsel "confer in good faith to determine to what extent the issue in question can be resolved without court intervention." It appears from the responses of Noatex (Docket 32 and 33) and MMS (Docket 34) that at least a partial agreement was reached in a subsequent meet and confer session and that Noatex and MMS intend to continue the conference to further resolve the issues with the subpoena. The parties should have worked together to reach an amicable resolution of these issues before seeking court intervention, as contemplated by Local Rule 37(a). Consequently, the Motion to Quash is DENIED.