GRIFFIS, P.J.,
dissenting:
¶ 18. The majority correctly presents the question to be decided. Did KGC owe ODC any money on February 2, 2009, when Triangle served its stop-payment notice? The chancellor found that KGC did owe money to ODC, and the majority agreed. I disagree. I find that there is no evidence to support the finding that KGC owed ODC any amount of money on February 2, 2009. Therefore, under Mississippi Code Annotated section 85-7-181 (Rev.2011), Triangle was not entitled to *990 recover from KGC. I respectfully disagree with the majority and dissent. I would reverse and render the chancellor’s judgment.
¶ 19. Section 85-7-181,[1] titled “Amount due contractor ... may be bound by written notice; suit,” in relevant part provides:
When any contractor ... shall not pay any person who may have furnished materials, labor or rental or lease equipment used in the erection, construction, alteration, or repair of any house, building, structure, [or] fixture ... the amount due by him to any subcontractor therein, ... rental or lease equipment supplier or laborer employed by him therein, any such person, subcontractor, journeyman, laborer or rental or lease equipment supplier may give notice in writing to the owner thereof of the amount due him and claim the benefit of this section; and, thereupon the amount that may be due upon the date of the service of such notice by such owner to the contractor ... shall be bound in the hands of such owner for the payment in full, or if insufficient then pro rata, of all sums due such person, subcontractor, journeyman, rental or lease equipment supplier or laborer who might lawfully have given notice in writing to the owner hereunder, and if after such notice, the contractor ... shall bring suit against the owner, the latter may pay into court[ ] the amount due on the contract; and thereupon all persons entitled hereunder, so far as known, shall be made parties and summoned into court to protect their rights, contest the demands of such contractor or master workman and other claimants; and the court shall cause an issue to be made up and tried and direct the payment of the amount found due in accordance with the provisions hereof; or in case any person entitled to the benefits hereof, shall sue the contractor or master workman, such person so suing shall make the owner and all other persons interested, either as contractors, master workmen, subcontractors, laborers, journeymen, rental or lease equipment suppliers or mate-rialmen, so far as known, parties to the suit (and any such party not made a party in any suit hereunder authorized may intervene by petition), and, thereupon the owner may pay into the court the amount admitted to be due on the contract or sufficient to pay the sums claimed, and the court shall cause an issue to be made up and award the same to the person lawfully entitled; in either case the owner shall not be liable for costs; but if the owner, when sued, with the contractor or master workman, shall deny any indebtedness sufficient to satisfy the sums claimed and all costs, the court shall, at the instance of any party interested, cause an issue to be made up to ascertain the true amount of such indebtedness and shall give judgment and award costs, and reasonable attorney’s fees, according to the rights of the several parties in accordance herewith. In case judgment shall be given against such owner, such judgment shall be a lien, from the date of the original notice, and shall be enforced as other liens provided in this chapter. The owner shall not be liable in any event for a greater amount than the amount contracted for with the contractor.
¶ 20. The chancellor concluded that KGC owed $82,000 to ODC, and the chancellor determined Triangle was entitled to recover $15,065.88 and attorney’s fees in the amount of $5,588.28 under section 85- *991 7-181. The chancellor identified two letters that supported the decision.
¶ 21. First, in a letter dated November 21, 2008, KGC attempted to get ODC to complete its work under the contract. KGC acknowledged it had received three stop-payment notices, from Total Lawn Care, Williams Equipment and Supply, and CMC Ready Mix. The letter also said that KGC intended to make dual-payee checks to these companies, up to $32,000. KGC said that it would pay the stop-payment notices in the order they were received.
¶ 22. Second, in a letter dated March 12, 2009, KGC said that the cost to complete the job was $52,190.10, and there was only $32,000 “left to draw” at the time ODC stopped work. The letter said that KGC intended to write checks to the following entities in the following amounts: (1) Total Lawn Care and Claude Neal/ ODC for $4,726.26, (2) Williams Equipment and Supply and Claude Neal/ODC for $7,379, and (3) CMC Ready Mix for $23,834.25. More importantly, the letter stated that KGC had paid beyond its contractual obligation and only paid these companies for work performed because KGC had led them to believe funds would be left over when the job was completed.
¶ 23. This Court “will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, applied an erroneous legal standard, was manifestly wrong, or was clearly erroneous.” Hamilton v. Hopkins, 834 So.2d 695, 699 (¶ 12) (Miss.2003). Here, the chancellor clearly erred when he determined KGC owed ODC $32,000 on the contract.
¶ 24. There is no evidence in the record to establish that KGC owed, on September 2, 2009, any further sum to ODC. In fact, the opposite is true. The record established that KGC had paid all sums owed ODC on October 22, 2008. After that payment, ODC stopped work and abandoned the project. As a result, ODC abandoned its right to future payments under the contract.
¶ 25. As of ODC’s abandonment of the project, it is correct to say that the total sum owed under the contract less the amounts paid to ODC left an balance of $32,000. However, this balance was to be used to finish the contract.
¶ 26. ODC did not finish the contract. Therefore, the balance of $32,000 was not owed to ODC. Instead, KGC had the right to use the balance to finish the contract. The evidence cited by the chancellor did not prove that KGC owed any sum to ODC. Instead, at best, it established that KGC gratuitously paid ODC’s creditors.
¶ 27. This case is similar to Williams v. Taylor, 216 Miss. 563, 62 So.2d 883 (1953). In Williams, the owner of a subdivision project hired a contractor to build houses. Id. at 566, 62 So.2d at 884. The contractor began work but later abandoned the job. Id. at 567-68, 62 So.2d at 884. The owner found another contractor to finish the job. Id. at 568, 62 So.2d at 884. Subcontractors filed stop notices with the owner. Id. The Mississippi Supreme Court found that the owner owed the main contractor nothing. Id. at 569, 62 So.2d at 885.
¶ 28. Like in Williams, on February 2, 2009, KGC did not owe ODC any additional sum. ODC abandoned the project and forfeited its right to the remainder of the contract. The $32,000 balance was not owed to ODC because it was not earned.
¶ 29. When KGC issued dual-payee checks to other companies, KGC did not admit that it owed any amount to ODC. ODC had filed a materialman/construction lien against KGC. KGC’s president, Kenny Coleman, testified that he made the checks payable to the various entities because at *992 the time he was not sure about the outcome of the lien action. Thus, Coleman testified that the dual-payee checks were a proactive step and not an admission that KGC owed ODC.
¶ 30. Because KGC did not owe ODC, Triangle is not entitled to any relief under the stop-payment-notice statute. Therefore, I would reverse and render the decision of the Lafayette County Chancery Court.
BARNES, J., JOINS THIS OPINION.

. A Mississippi federal court recently held this statute unconstitutional. Noatex Corp. v. King Constr. of Houston, LLC, 864 F.Supp.2d 478, 484-85 (N.D.Miss.2012).